Filed 5/18/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GERALD L. NUNN et al.,<br><br>     Plaintiffs and Appellants,<br><br>          v.<br><br>JPMORGAN CHASE BANK, N.A. et al.,<br><br>     Defendants and Respondents. | A160286<br><br>(Napa County Superior Court Case No. 26-56767) |
| GERALD L. NUNN et al.,<br><br>     Petitioners,<br><br>          v.<br><br>THE SUPERIOR COURT OF NAPA COUNTY,<br><br>     Respondent,<br><br>JPMORGAN CHASE BANK, N.A. et al.,<br><br>     Real Parties in Interest. | A160794<br><br>(Napa County Superior Court Case No. 26-56767) |

This consolidated appeal and petition for writ of mandate call upon us to apply two provisions in the Code of Civil Procedure:  section 583.320 limits to three years the time within which a plaintiff, having succeeded on appeal, may bring a case to trial after the remittitur is filed in superior court, and section 583.330 allows the parties to extend that deadline by agreement.  (All

1

statutory references are to the Code of Civil Procedure, unless otherwise indicated.)  We conclude the parties' agreement here to a trial date outside the three-year period extended the statutory deadline to that trial date, and on that basis we reverse the judgment dismissing this case for failure to prosecute.

## BACKGROUND

Gerald and Judith Nunn, husband and wife, owned a home in Napa with a mortgage they refinanced in July 2006 through Washington Mutual Bank, F.A.  The loan was a negative amortization loan, and when the Nunns' payments jumped from less than $2,900 per month to almost $4,300 in August 2008, they defaulted on the loan.  In January 2009, the Nunns filed an application for a loan modification with JPMorgan Chase Bank, N.A. (Chase), which had acceded to Washington Mutual's loan.  In 2010, Chase denied the Nunns' modification application but continued negotiations with them until the Nunns finally sued.

In August 2011, the Nunns filed the underlying action against Chase and its affiliates (Chase Defendants), alleging wrongful foreclosure, quiet title, and negligence, among other things, based on allegations that Chase had "dual track[ed]" them during loan modification negotiations.  (See *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 904–905 [describing "dual tracking"].)  The superior court granted the Chase Defendants' motion for summary judgment in 2013 and entered judgment in their favor.

The Nunns appealed, and in 2016 this court reversed the judgment, finding that the Nunns stated valid causes of action for negligence and violation of the implied covenant of good faith and fair dealing.  (See *Nunn v. JPMorgan Chase Bank, N.A.* (May 13, 2016, A139718) [nonpub. opn.] (*Nunn I*).)  This court's appellate opinion was followed by a remittitur filed in

2

the superior court on July 18, 2016. The following month, Chase sold the Napa house in a foreclosure sale, in which Chase itself was the highest bidder and acquired the property. In April 2017, the Nunns filed a notice of lis pendens against the property, giving any potential purchaser notice that it was subject to litigation.

Under section 583.320, the Nunns had until July 18, 2019 to bring their case to trial, which was three years from the date the remittitur was filed in the superior court. Meanwhile, the parties resumed pre-trial activities, which included amending pleadings, filing demurrers, and conducting discovery. In March 2019, the Chase Defendants filed a case management conference statement in which they advised the court of their intent to complete discovery by "Summer 2019" and to file a motion for summary judgment prior to trial.

On May 16, 2019, a case management and trial setting conference was held before the Honorable Victoria Wood without a court reporter. The minutes from this hearing indicate that the parties "apprised" the court that the matter was ready to be set for trial and a trial date was set for January 13, 2020.

On August 30, 2019, with the January 2020 trial date pending, the Chase Defendants moved to dismiss the Nunns' case pursuant to section 583.320 on the ground that the three-year deadline for bringing the case to trial had passed. Defendants argued dismissal was mandatory because they had not stipulated or agreed in open court to extend the three-year deadline. The Nunns opposed this motion on various grounds: compliance with the statutory deadline was impracticable due to the death of their former counsel and their own illnesses; the Chase Defendants were estopped from seeking dismissal because they abused the discovery process; the court's calendar

3

precluded setting an earlier trial date; and the trial deadline was reset by a pleading amendment changing the gravamen of their complaint.

On September 26, 2019, the Honorable Monique Langhorne dismissed this action, finding that the Nunns failed to carry their burden of establishing a statutory exception to the three-year mandatory dismissal statute. In December 2019, the Nunns' attorney, Ronald Freshman, sought permission to withdraw as counsel, which was granted on January 14, 2020. On January 30, the court entered a judgment of dismissal with prejudice and notice of entry of judgment was given on February 18, 2020.

The Nunns, with the assistance of new trial counsel, filed two post-judgment motions on February 18, 2020. They filed a motion to correct the minutes of the May 16, 2019 hearing, seeking to have the minutes reflect that the January 2020 trial date was set "by the agreement of the parties and to accommodate [the Chase Defendants'] request for a trial date sufficiently in the future to take deposition discovery and bring a motion for summary judgment." Opposing this motion, the Chase Defendants argued the correction requested by the Nunns was "improper" because there was no evidence that the Chase Defendants "expressly agreed to waive Plaintiffs' deadline" for bringing their case to trial.

The Nunns also filed a motion for a new trial on the ground that their case should not have been dismissed because the trial date was set pursuant to an agreement between the parties, which was enforceable under section 583.330. The Nunns argued that, even if the record was not corrected to reflect this agreement, theories of waiver or estoppel extended the deadline for bringing the case to trial. In their opposition to this motion, the Chase Defendants admitted requesting a trial date that would allow them to conduct further discovery and move for summary judgment, but they argued this fact

4

was irrelevant because the Nunns did not object to the trial setting or obtain a waiver of the statutory deadline.

On March 13, 2020, Judge Langhorne denied the Nunns' motion to correct the minutes, treating it as an improper motion for reconsideration of her September 2019 order of dismissal. On April 3, 2020, the court denied the Nunns' new trial motion for "the reasons set forth in defendant[s'] opposition." On June 1, 2020, the Nunns filed the instant appeal from the judgment and the orders denying their motions to correct the record, and for a new trial.[1]

On June 1, 2020, the Chase Defendants filed a motion in the superior court to expunge the lis pendens the Nunns had filed against the property. The court granted the expungement motion and ordered the lis pendens expunged effective August 28, 2020, giving the Nunns time to seek an appellate remedy. On August 26, 2020, the Nunns filed a petition for writ of mandate in this court, seeking an order directing the trial court to vacate its order expunging the lis pendens.

The Nunns, who are both 80 or nearly 80 years old, filed a motion for calendar preference, a motion for a stay of the order expunging the lis pendens, and a motion to consolidate their writ petition with their appeal. We granted the stay pending further order of this court, granted the motion to

---

[1] The Nunns' notice of appeal was timely under emergency rules adopted in response to the COVID-19 pandemic. We grant the Nunns' motion for judicial notice of COVID-related court rules and of the appellate record in *Nunn I*.

The order denying the motion to correct the minutes was not a separately appealable order. (*Griess v. State Investment etc. Co.* (1892) 93 Cal. 411, 413; *Simmons v. Santa Barbara Ice etc. Co.* (1958) 162 Cal.App.2d 23, 27.) We may address it as an intermediate order on appeal from the judgment of dismissal (§ 906; see *In re Marriage of Griffin* (1993) 15 Cal.App.4th 685, 689), which did not become appealable until the Nunns' motion for a new trial was decided (Cal. Rules of Court, rule 8.108(b)(1)(A)).

consolidate, and set an expedited schedule for briefing and oral argument. Unable to obtain a transcript for dispositive hearings, the parties proceed on appeal in part by way of a settled statement of proceedings had on May 16, 2019 and September 26, 2019, as certified by the superior court on July 14, 2020. (See Cal. Rules of Court, rule 8.137.)

## DISCUSSION

### I. The Parties Agreed to Extend the Mandatory Trial Deadline

The Nunns contend the judgment dismissing this action under section 583.320 must be reversed because the statutory deadline for bringing their case to trial was extended to January 13, 2020 pursuant to section 583.330.

We review a judgment of dismissal under section 583.320 for abuse of discretion. (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1100.) Under this standard, " '[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*Ibid.*) Thus, while we review the trial court's order for abuse of discretion, to the extent our decision requires us to construe sections 583.320 or 583.330, the de novo standard of review applies. (*Gaines*, at p. 1100; see *Williams v. Superior Court* (2017) 3 Cal.5th 531, 540.)

Section 583.310 sets forth the requirement of bringing a case to trial in five years, and section 583.320 lays out the three-year deadline following appeal and remand. Dismissal is mandatory for a violation of either statute absent a statutory exception. (§ 583.360, subd. (a).) While this case was dismissed under the three-year statute, we also consider cases applying the five-year statute because the same policies apply to both statutes. (See e.g., *Hattersley v. American Nucleonics Corp.* (1992) 3 Cal.App.4th 397, 401.)

6

The Nunns rely on an exception to the mandatory dismissal statutes, which allows parties to stipulate to an extension of the statutory deadline. Section 583.330 provides: "The parties may extend the time within which an action must be brought to trial pursuant to this article by the following means: [¶] (a) By written stipulation. The stipulation need not be filed but, if it is not filed, the stipulation shall be brought to the attention of the court if relevant to a motion for dismissal. [¶] (b) By oral agreement made in open court, if entered in the minutes of the court or a transcript is made."

The record shows that the trial date in this case was set beyond the three-year statutory deadline in open court at the May 16, 2019 hearing. The disputed issue is whether this trial date was set pursuant to an oral agreement made in open court and enforceable under the statute.

Section 583.330 does not address what terms comprise an oral agreement extending the trial deadline. Nor do the parties cite case authority interpreting the oral agreement prong of this statute. However, we find useful guidance in cases involving written stipulations. *Miller & Lux Inc. v. Superior Court* (1923) 192 Cal. 333, 337–338 (*Miller & Lux*) construed former section 583, a predecessor statute authorizing extension of the statutory trial deadline by written stipulation. In that case, our Supreme Court concluded that parties may extend the trial deadline either by expressly waiving the benefit of the mandatory dismissal statute or by agreeing to postpone the trial to a specific date that is beyond the statutory period. (*Miller & Lux,* at pp. 337–338.) The justification for permitting parties to extend the trial deadline without expressly referring to the dismissal statute is that "[a] stipulation to extend the time of trial beyond the [statutory] period necessarily waives the right to a dismissal of the action" under the statute. (*Smith v. Bear Valley Milling & Lumber Co.* (1945) 26 Cal.2d 590, 599; see also *J. C.*

7

*Penney Co. v. Superior Court* (1959) 52 Cal.2d 666, 669 [stipulations must "extend in express terms the time of trial to a date beyond the five-year period or expressly waive the right to a dismissal"]; *Larkin v. Superior Court* (1916) 171 Cal. 719, 723 [stipulations of many forms, including "stipulations continuing the trial to a date beyond the five year period, . . . suffice as an answer to a motion to dismiss"].)

The reasoning of *Miller & Lux* has been extended to the written stipulation prong of section 583.330.  (*Munoz v. City of Tracy* (2015) 238 Cal.App.4th 354, 360–361 [collecting cases].)  *Munoz* was a personal injury action against the City of Tracy.  Under section 583.310, the five-year deadline for bringing the plaintiff's case to trial was due to expire in December 2013.  A few months before that deadline, the parties executed a written stipulation to continue the trial to June 16, 2014.  (*Munoz,* at p. 357.)  Nevertheless, in February 2014, the trial court dismissed the action, finding that the written stipulation was ineffectual because it did not include an express waiver of the five-year deadline or of the defendant's right to dismissal under section 583.310.  The Court of Appeal reversed, holding that the trial deadline was extended to June 16, 2014 pursuant to the parties' written stipulation and, therefore, the trial court erred in granting the City's motion to dismiss.  (*Munoz,* at pp. 361–362.)  Applying *Miller & Lux* and its progeny, the *Munoz* court found there was no need for the defendant expressly to waive the benefit of section 583.310 because an agreement to extend trial to a specific date beyond the five-year period necessarily waived, until that date, the right to dismissal under the five-year statute.  (*Munoz,* at p. 360.)[2]

---

[2]  The dissent relies on two older Court of Appeal decisions for the following proposition:  "Under *Miller & Lux,* simple agreement on a trial date that, without either party realizing it, happens to be beyond the deadline, is

8

We interpret the oral agreement prong of section 583.330 to be consistent with its written stipulation counterpart in authorizing parties to extend the statutory trial deadline by agreeing to postpone trial to a specific date beyond the statutory period. This construction is permissible under the statutory language, creates parity with respect to judicial treatment of written and oral agreements, and is grounded in relevant precedent. Our interpretation of this provision also furthers legislative intent. When the Legislature enacted the mandatory dismissal statutes it was cognizant of the tension created by two important policies, one requiring reasonable diligence in the prosecution of an action and the other requiring cooperation among all parties in bringing the action to trial or other disposition. (§ 583.130.) We reconcile these policies in accordance with the Legislature's admonishment that "[e]xcept as otherwise provided by statute or by rule of court . . ., the policy favoring the right of parties to make stipulations in their own interests and the policy favoring trial or other disposition of an action on the merits are generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action." (*Ibid.*)

---

not enough. The parties must have in mind the setting of a date they both understand extends 'the statutory time.' " (Dis. opn. of Streeter, J., *post* at p. 18 [citing *Anderson v. Erwyn* (1966) 247 Cal.App.2d 503, 506; *Rosenfelt v. Scholtz* (1936) 17 Cal.App.2d 443, 445].) We do not read either case to support this proposition, as in neither was a trial date ever set. In *Anderson*, the parties stipulated simply to taking a pretrial conference "off calendar subject to being reset at a mutually convenient time." (*Anderson*, at p. 507.) And in *Rosenfelt*, although the parties stipulated that the "case may be set for trial at any time on or after" a certain date, they never mentioned or agreed to any particular trial date. (*Rosenfelt*, at p. 444.) Their stipulation did not act to extend the statutory period because it was not one in which " 'a different limit has been fixed.' " (*Ibid.*) By contrast, in *Munoz* and in our case the parties fixed a different limit when they agreed to a specific trial date outside the statutory period.

9

Turning to the facts of the present case, we ask whether the parties agreed at the May 16, 2019 hearing either to waive the three-year statute or to postpone trial to a specific date beyond the three-year deadline. The settled statement describes the hearing as follows: "Plaintiffs' counsel, Ronald Freshman, and defendants' counsel, David Harford, appeared by telephone. The plaintiffs, Gerald and Judith Nunn, were in the courtroom. [¶] The court confirmed with both attorneys that the matter was ready for trial. The court suggested November 2019, but Mr. Harford indicated November would be too early because defendants intended to file a summary judgment motion and needed to take the plaintiffs' depositions before filing that motion. [¶] The court then proposed a trial for January 13, 2020. The lawyers both indicated to the court that they had no objection to the trial being set on January 13, 2020. The Nunns told the court that date was alright with them. [¶] The court set dates for a settlement conference and for a trial management conference. The proceedings then concluded."

We conclude this interchange constitutes an oral agreement within the meaning of section 583.330. The judge proposed a trial date beyond the statutory deadline to accommodate the Chase Defendants, who requested additional time to conduct discovery and bring a summary judgment motion. The parties expressed their agreement to extend the trial deadline to this date when counsel for both sides "indicated" on the record that they had "no objection" to a January 13, 2020 trial date. The Nunns, who were present in court, also verbally agreed to the proposed date. On appeal, the Chase Defendants do not dispute these factual circumstances, which we find to be dispositive under the reasoning of *Miller & Lux* and *Munoz*. By explicitly agreeing to the January trial date, the parties implicitly agreed to extend the statutory period to January 13, 2020.

10

The Chase Defendants argue that dismissal of this action was appropriate because the Nunns violated their duty as plaintiffs to keep track of the three-year deadline. (Citing e.g., *Hill v. Bingham* (1986) 181 Cal.App.3d 1; *Perez v. Grajales* (2008) 169 Cal.App.4th 580.) A plaintiff who contends the statutory period for bringing a case to trial was tolled due to impossibility, impracticability, or futility (§ 583.340, subd. (c)) must show that he or she exercised reasonable diligence to overcome obstacles to compliance with the mandatory trial deadline. (*Hill*, at p. 10; *Perez*, at p. 590.) The question here, however, is not whether the Nunns violated their duty of diligence but whether the parties agreed to extend the statutory deadline.

The Chase Defendants argue that the settled statement does not contain evidence of an agreement because it shows only that the Nunns "acquiesced" to a trial date that was set by the court beyond the three-year deadline, which is insufficient to avoid operation of the mandatory dismissal statute. (Quoting *Central Mutual Ins. Co. v. Executive Motor Home Sales, Inc.* (1983) 143 Cal.App.3d 791, 795.) This argument ignores many relevant facts: The court proposed a January 2020 trial date to accommodate the interests of the Chase Defendants, as expressed first in their case management conference statement and then at the telephonic conference; and the Nunns and counsel for both parties did not merely acquiesce in, but affirmatively accepted, the proposed date beyond the three-year deadline. In particular, the Chase Defendants' lawyer, having just rejected the court's proposal of a date in November 2019 as premature, "indicated" that the January 2020 date was acceptable; he had no objection to the later date.[3] Taken together, these

_____

[3] The dissent argues that the trial date was "imposed on the parties" rather than mutually agreed (Dis. opn. of Streeter, J., *post* at p. 6), but we would view this case very differently if the Chase defendants had objected or

11

expressions of mutual assent constitute an agreement to extend the deadline for bringing this case to trial until January 13, 2020.

The Chase Defendants rely heavily on *Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262 (*Sanchez*). In that 1997 wrongful death action against a city and two police officers, a trial date was first set for December 1997 but was continued several times, often at plaintiffs' request. In July 2001, counsel for one defendant committed suicide and the parties stipulated to continue the trial and to request a trial date of December 18, 2001. (*Id*. at p. 1267.) When the matter was discussed at a September 2001 telephone conference, the court inquired about trial readiness and then set a trial date for January 29, 2002. Nobody alerted the court this date was after the five-year deadline of January 10, 2002. (*Id*. at p. 1267.) The court did not discover that fact until January 17, at a final status conference held in the court's chambers. During the conference, plaintiffs' counsel indicated that he believed the five-year period would expire in June or July 2002 but when the court reviewed the file it discovered the trial deadline had already passed. (*Ibid*.) Defendants responded to this news by filing a motion to dismiss, which the trial court granted.

The *Sanchez* plaintiffs opposed the motion to dismiss on the ground that the five-year period was tolled due to impracticability, impossibility, or futility

---

responded to the court's November proposal by saying they preferred an *earlier* trial date, and the court had nonetheless set trial for a date in November 2019. *Boyd v. Southern Pacific R. R. Co.* (1921) 185 Cal. 344, 347 is not to the contrary. The "complete answer" to the argument in *Boyd* that the defendant acquiesced in setting the case for trial outside the statutory period was "that it does not appear that the defendant did so acquiesce"; it "may have contested the motion to set or . . . asked for an earlier date which, upon the plaintiff's objection, was refused." (*Ibid*.) (Cf. dis. opn. of Streeter, J., *post* at pp. 40–41, fn. 25.)

because the suicide by defense counsel caused an earlier trial date to be vacated and several months of delay. (*Sanchez, supra,* 109 Cal.App.4th at p. 1268.) Rejecting this claim, the trial court found the case could have been tried within five years if plaintiffs' counsel had brought the matter to the court's attention, and concluded further that the " 'only' " reason trial was set for a date beyond the deadline was to accommodate the trial schedule of plaintiffs' counsel. (*Ibid*.) Affirming the judgment, the *Sanchez* court found that plaintiffs' impracticability claim was properly rejected; there was no causal connection between defense counsel's suicide and plaintiffs' failure to comply with the five-year statute, and plaintiffs' noncompliance was attributable to lack of diligence by plaintiffs' counsel, who misapprehended the five-year date and acquiesced to a trial date beyond the deadline. (*Id.* at p. 1273.)

The Chase Defendants contend that the judgment in this case should be affirmed under *Sanchez*. We disagree. The issue here is whether the parties agreed to extend the statutory trial deadline, not whether the three-year period was tolled due to impracticability. *Sanchez* addresses extension agreements only peripherally, in a footnote rejecting plaintiff's contention that the five-year deadline was extended by a stipulation the parties made after defense counsel died. (*Sanchez, supra*, 109 Cal.App.4th at p. 1269, fn. 3.) That stipulation did not extend the five-year period, the court found, because " '[s]tipulations that merely extend the time for trial *within* the five-year period, absent a showing that the parties intended otherwise, will not extend the five-year period.' " (*Ibid*., italics partially omitted.) The parties' agreement had been to a December trial date within the statutory period, not to the January trial date that fell outside it. In the present case, unlike *Sanchez*, the parties agreed to extend the trial to a date *beyond* the statutory deadline.

13

The Chase Defendants also rely on *Wright v. Groom Trucking Co.* (1962) 206 Cal.App.2d 485, which affirmed a judgment dismissing an action under former section 583. In that case the plaintiffs argued that a pretrial conference order setting a trial date beyond the statutory deadline was itself a written stipulation within the meaning of the former statute. (*Id.* at p. 490.) The *Wright* court rejected this claim because the order did not mention a stipulation entered into between the parties, nor was such a stipulation recorded elsewhere in the trial court's minutes. (*Id.* at pp. 492–493.) The *Wright* court explained that it could not "look behind the court's pretrial conference order and in effect change it, by construing it as a written stipulation" between the parties. (*Id.* at p. 492.)

The Chase Defendants contend this case is controlled by *Wright* because the settled statement suffers from the same deficiency as the pretrial conference order, in that it does not refer to an "agreement" or "stipulation" between the parties to extend the three-year deadline. Because *Wright* was decided before the statute allowed parties to extend a trial deadline by oral agreement, that case does not purport to address what formalities are necessary to prove that such an agreement was made. Further, if the Chase Defendants are suggesting that *Wright* requires parties to use the word "stipulation" in order make a binding agreement, we disagree. The pretrial order analyzed in *Wright* could not be construed as a stipulation because it made no mention of a stipulation *and* the court found no evidence of such an agreement anywhere else in the court minutes. Here, the settled statement recounts words and actions by the parties that constitute objective evidence of an agreement to set the trial for a specific date, one that was beyond the three-year deadline. Specifically, the settled statement shows that the Chase Defendants explicitly asked for a trial date after November 2019 (i.e., beyond

14

the statutory deadline), and that both parties affirmatively agreed to the January 13, 2020 date.

The Chase Defendants' role in setting a trial date beyond the three-year period makes this case more analogous to *Govea v. Superior Court* (1938) 26 Cal.App.2d 27 (*Govea*). In *Govea*, a trial that had been set for a date within the five-year period was continued to a date beyond that period during a court hearing. The superior court minutes from the hearing reflected that the defendant made a motion to continue the trial to the later date and the plaintiff stipulated to the postponement. (*Id.* at pp. 29–30.) Subsequently, the trial date was continued again pursuant to the court's own motion, and when that date arrived, the defendant moved to dismiss the action for want of prosecution. The trial court denied the motion, finding that the parties' stipulation, made in open court and entered in the minutes, qualified as a written stipulation under former section 583. (*Id.* at p. 30.)

The *Govea* defendant filed a writ petition challenging the denial of his motion to dismiss, which was also denied. (*Govea, supra*, 26 Cal.App.2d at p. 28.) The *Govea* court held that even if the stipulation that was recorded in the minutes did not "literally comply with the language of [former] section 583," it estopped the defendant from "thereafter making a motion to dismiss the cause for want of prosecution" because "a party to an action cannot be allowed in such manner to play fast and loose with the court." (*Id.* at p. 31.) Because *Govea* was decided before the statutory trial deadline could be extended by oral agreement, the court relied on estoppel principles to affirm the finding that the trial deadline was extended in that case. (*Ibid.*; see also *Woley v. Turkus* (1958) 51 Cal.2d 402, 408; *Tresway Aero, Inc. v. Superior Court* (1971) 5 Cal.3d 431, 439.) We have no need to resort to estoppel principles here, but note the *Govea* court's implicit finding that the parties

15

had entered into an oral agreement to extend the trial deadline based on evidence that the defendant requested a trial date that fell beyond the five-year deadline and the plaintiff stipulated to that trial date. Those same facts are present here.

Thus, with the benefit of the settled statement of the May 16, 2019 hearing, we conclude that the superior court record shows the parties orally agreed to a trial date that extended the three-year statutory deadline for bringing this case to trial to January 13, 2020. (See § 583.330.) Because the settled statement was not part of the superior court record when this case was dismissed, the Nunns' do not appeal the September 2019 dismissal order but instead limit their challenge to the post-dismissal orders to which we next turn.

## II. The Post-Dismissal Orders

The Nunns contend the trial court erred by denying their motion to correct the minutes of May 16, 2019 on grounds the motion was untimely and procedurally improper. The record shows that Judge Langhorne treated the Nunns' motion to correct the court minutes as an untimely motion for reconsideration of her September 2019 order granting the Chase Defendants' motion to dismiss. We note that the Chase Defendants do not defend this ruling in their appellate brief.

The Nunns' motion was not untimely because a correction to court minutes may be made at any time. (*Siegal v. Superior Court* (1968) 68 Cal.2d 97, 101 (*Siegal*); *Haynes v. Lost Angeles R. R. Corp.* (1927) 80 Cal.App. 776, 780.) Moreover, any correction that was warranted had to be made in the superior court because the veracity of a trial court's minutes cannot be collaterally attacked in the appellate court. (*Govea, supra*, 26 Cal.App.2d at pp. 32–33.)

16

Nor did the Nunns' motion seek reconsideration of the court's ruling on the tolling arguments that proved unsuccessful in opposing the motion to dismiss. Instead, they sought to invoke the court's inherent power to correct its own records. " 'The rule is well settled in this state that every court of record has the inherent power to correct its records so that they shall conform to the facts and speak the truth, and likewise correct any error or defect occurring in a record through acts of omission or commission of the clerk in entering of record the judgments or orders of the court, and such correction may be made at any time by the court on its own motion.' " (*Siegal, supra*, 68 Cal.2d at p. 101; see also *Dalley v. B. & H. Transportation Co.* (1931) 114 Cal.App. 320, 322 [court may correct "clerical error or omission in its minutes so that they will speak the truth"].) " 'The power exists independently of statute and may be exercised in criminal as well as in civil cases. . . . The court may correct such errors on its own motion or upon the application of the parties.' " (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

Finally, Judge Langhorne found that there was "nothing to 'correct' " in the May 16, 2019 proceeding because the minute order "correctly report[ed] that the Court set trial for January 13, 2020." This cursory observation fails to address whether relevant facts about the May 2019 proceeding were omitted from the clerk's record of that hearing. The court's power to correct its record includes the power to cure omissions, so that a minute order accurately and completely captures the proceedings. (*Siegal, supra,* 68 Cal.2d at p. 101.) Here, Judge Langhorne did not have first-hand knowledge as to whether relevant facts were omitted because she was not present at the trial-setting conference, which Judge Wood presided over. But she did have a declaration from Judith Nunn to the effect that the lawyers had agreed at the

17

hearing to the January 13, 2020 trial date, which would have been legally significant.

To the extent Judge Langhorne determined that the court minutes do not contain a clerical error, her decision is not conclusive. Usually a trial court decision about whether to correct its own records is afforded great deference (*Conservatorship of Tobias* (1989) 208 Cal.App.3d 1031, 1034), but this treatment rests on an assumption that the decision whether to correct will be made by the judge who presided over the hearing at issue. (*Carpenter v. Pacific Mut. Life Ins. Co.* (1939) 14 Cal.2d 704, 708–709; *Brown v. Brown* (1958) 162 Cal.App.2d 314, 318.) When "[t]he facts were completely and solely within [the] knowledge" of the trial judge, such that he or she "alone knew whether a mistake had been made and how it had been made," the judge's determination of the facts is " 'conclusive.' " (*Carpenter*, at p. 709.) In the present case, the relevant facts were completely within the knowledge of Judge Wood and, although Judge Wood did not rule on the correction motion, we can still benefit from her knowledge because she is the judge who certified the settled statement of the May 2019 hearing.

The settled statement is an authorized substitute for a reporter's transcript of a proceeding, the purpose of which is to provide an adequate record for an appellate court to decide an issue on appeal. (Cal. Rules of Court, rule 8.137; see *Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 933–934.) In certifying the settled statement in this case, Judge Wood properly did not decide whether the parties made an oral agreement that was binding, but she did provide a factual account of the proceeding that is certain and undisputed, and that enables us to determine whether an oral agreement was made. (See *HM DG, Inc. v. Amini* (2013) 219 Cal.App.4th 1100, 1109 [" 'if the material facts are certain or undisputed, the existence of a contract is a

question for the court to decide' "]; *Miller & Lux, supra*, 192 Cal. at p. 341 [whether defendant has waived its right to dismissal is a question of law].) The undisputed facts recorded in the settled statement show that the parties orally agreed in open court to a trial date that was beyond the three-year deadline.  By the same token, this unassailable evidence also shows that Judge Langhorne's summary denial on erroneous procedural grounds of the Nunns' motion to amend the court minutes was prejudicial error.

The record also shows that this prejudice infected the trial court's adjudication of the Nunn's new trial motion.  The Nunns moved for a new trial on the specific ground that the parties extended the three-year deadline pursuant to an oral agreement at the May 2019 hearing.  This new trial motion was a proper mechanism for the Nunns to challenge the judgment of dismissal for failure to prosecute.  (See *Finnie v. District No. 1—Pacific Coast Dist. etc. Assn.* (1992) 9 Cal.App.4th 1311, 1316.)  Moreover, they were not restricted to legal arguments that they had made prior to the judgment. (*Hoffman-Haag v. Transamerica Ins. Co.* (1991) 1 Cal.App.4th 10, 15.) Nevertheless, the court denied the motion as moot because the Nunns' motion to correct the minutes of the May 2019 hearing had already been denied. Relatedly, the court denied the motion "for reasons stated in the [Chase Defendants'] opposition" to the new trial motion.  The Chase Defendants had opposed the new trial motion on the ground that there was no evidence of an oral agreement "entered in the minutes of the court or a transcript."  Thus, the erroneous denial of the motion to correct the minutes was inextricably intertwined with the denial of the new trial motion.[4]  For the trial court to

---

[4]  In light of this conclusion, we need not address the Nunns' contention that procedural constraints relating to the COVID-19 pandemic deprived the Nunns of their due process right to a proper consideration of their new trial motion.

19

deny the Nunns' motion for a new trial was to compound the error of having summarily denied their motion to correct the minutes.

## III.  The Petition for Writ of Mandate

The Nunns contend that the order granting the Chase Defendants' motion to expunge the lis pendens must be reversed because it is premised on the judgment of dismissal, which must also be reversed.  The Chase Defendants counter that the judgment was properly dismissed and, in any event, the Nunns failed to carry their burden of proving the probable merit of their real property claims.

" 'A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title or right to possession of the real property described in the notice.' " (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647.)  The notice may be recorded by any party who "asserts a real property claim" in the action.  (§ 405.20.)  "A lis pendens clouds title until the litigation is resolved or the lis pendens is expunged, and any party acquiring an interest in the property after the action is filed will be bound by the judgment." (*Slintak v. Buckeye Retirement Co., L.L.C., Ltd.* (2006) 139 Cal.App.4th 575, 586–587.)

Section 405.30 authorizes a party or nonparty "with an interest in the real property" to file a motion to expunge the lis pendens.  The court "shall order the notice expunged if the court finds that the pleading on which the notice is based does not contain a real property claim" (§ 405.31), or the real property claim "lacks evidentiary merit."  (*Park 100 Investment Group II, LLC v. Ryan* (2009) 180 Cal.App.4th 795, 808.)  The party opposing a motion to expunge a lis pendens has the burden to show that a real property claim has been alleged and has probable validity based upon a preponderance of the evidence.  (§§ 405.32, 405.30.)

20

In the present case, the Chase Defendants moved to expunge the lis pendens on the ground that the Nunns could not establish the probable validity of their real property claims because judgment was entered against them on January 30, 2020. The trial court issued a tentative ruling denying this motion on the ground that the matter was stayed pending appeal. However, after the Nunns conceded the matter was not stayed, the court issued another tentative ruling granting the motion. The court first rejected the Nunns' argument that their new trial motion should have been granted. Then the court found the Nunns failed to establish the probable validity of their claims for the reasons set forth in *Nunn I*. In reaching this conclusion, the court refused to consider the Nunns' offer of proof that their claims are probably valid. The court adopted this second tentative ruling at the conclusion of a July 29, 2020 hearing, and two days later it signed an order expunging the lis pendens.

These circumstances raise concerns that warrant issuance of a writ of mandate so the trial court may reconsider the expungement motion following reversal of this judgment. The trial court relied, at least in part, on the judgment dismissing this case under the mandatory dismissal law, which was the only ground upon which the Chase Defendants' based their motion. The court's alternative finding that the Nunns' claims are likely to fail for reasons set forth in *Nunn I* appears to overlook the fact that *Nunn I* found there were triable issues precluding summary judgment against the Nunns. Moreover, the Nunns contend this aspect of the trial court's order violated their due process rights to adequate notice and an opportunity to present evidence. (Citing *San Diego Watercrafts, Inc v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316 [when order will have significant impact on proceedings, due process requires proper notice and opportunity to present evidence].)

21

Although we need not decide the constitutional issue, it appears that the COVID-19 pandemic added an element of confusion to the procedure employed to decide the expungement motion.

## DISPOSITION

The judgment is reversed and this case is remanded for further proceedings consistent with this opinion. The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing the superior court to vacate the July 31, 2020 expungement order and reconsider the Chase Defendants' motion to expunge the lis pendens in light of this decision. The Chase Defendants are to bear costs in these consolidated proceedings.


TUCHER, J.


I CONCUR:


POLLAK, P. J.

STREETER, J., Dissenting.

By "long-settled principle" in our civil courts, plaintiffs have the responsibility " ' "to call to the attention of the court the necessity for setting the trial for a time within the period fixed by [Code of Civil Procedure[1] section 583.320]." ' " (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 434.) This is so "because it is they who have the interest, and the statutory duty under section 583.310, to timely prosecute their cases." (*Ibid.*) Mindful of this principle, I must respectfully dissent.

## A. *The Record*

### 1. The Settled Statement

Without considering the provenance of the settled statement memorializing what happened at the May 16, 2019 case management conference, the majority finds pivotal significance in the certification of that statement by Judge Wood, who presided at the conference and set the trial date at issue in this case. Not only does the settled statement as certified show that "both parties affirmatively agreed to the January 13, 2020 [trial] date" (maj. opn. *ante*, at p. 15), the majority concludes, but it was manifestly prejudicial to the Nunns for Judge Langhorne to deny their motion to correct the minutes of the May 2019 conference. (Maj. opn. *ante*, at pp. 17–19.) In so concluding, the majority adopts the Nunns' core assertion that the Chase Defendants "agreed" to a January 2020 trial date at the May 2019 case management conference.

This assertion is unsupported by the record.

First, when the Nunns submitted their proposed settled statement to Judge Wood for certification, they included language stating that "[t]he

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

1

lawyers agreed" to the January 13, 2020 trial date.  Judge Wood struck that language and ordered a correction saying instead that "[t]he lawyers both indicated to the court that they had no objection to the trial being set on January 13, 2020."  Judge Wood's refusal to find that the "lawyers agreed" to a trial date beyond the three-year deadline should end all discussion here. She presided; she knows that the trial date was set by order, not by agreement of the parties; and if her order set an "agreed" trial date, she would have certified that version of events.  It is simply not the case that Judge Wood "did not decide whether the parties made an oral agreement." (Maj. opn. *ante*, at p. 18.)  She was asked to certify that there had been such an agreement, which was in substance the same request that had been made to Judge Langhorne via the earlier minutes correction motion.  Both judges rejected the request.

Second, Judge Wood struck language in the Nunns' proposed settled statement saying that, at the outset of the May 2019 case management conference, "The lawyers and the court discussed trial dates."  The sequence of events recited in the settled statement, as corrected, shows that the first thing Judge Wood did was "confirm[] with both attorneys that the matter was ready to set for trial."  Only later, after she indicated she was considering a trial date in November 2019, did the issue of the Chase Defendants' interest in filing a summary judgment motion arise.[2]  Implicit in the Nunns'

_____

[2]  In their case management statement filed March 29, 2019, the Chase Defendants reported that they expected to file a summary judgment motion before trial, that they expected to complete the Nunns' depositions by "April 2019," and that they expected to complete expert discovery by "summer 2019."  In late March 2019, when the Chase Defendants made these statements, there was still ample time before the expiration of the three-year deadline to complete these items.  When they filed and briefed their motion to

2

argument in this appeal is that Judge Wood chose a trial date after the three-year deadline to accommodate the Chase Defendants' needs, but that is not consistent with her corrections to the sequence of events at the conference. This was not some mediation-like process in which she entertained "discussions" of when the trial should take place, resulting in a date set by consensus. She opened the conference by confirming both sides' readiness for trial—not after some period of time designed to meet any party's needs, but right then and there, on whatever date she set.

This detail matters because, in the Nunns' portrayal of what happened at the May 2019 case management conference, "Chase wasn't ready" for trial, needed "extra time," and requested a trial date beyond the three-year deadline. The majority uncritically adopts that position, stating that "the Chase Defendants admitted requesting a trial date that would allow them to conduct further discovery and move for summary judgment" (maj. opn. *ante*, at p. 4)—indeed they did—but that ignores the context. The settled statement is ambiguous about what motivated Judge Wood to set a trial date on the date she chose, but a perfectly reasonable reading of it in light of her corrections is as follows: She first confirmed the parties' readiness for trial; then selected a date in November 2019 that was convenient to the court; and then gave counsel some input, which led her to order a date six months beyond the three-year deadline, rather than four months beyond it. If that is what occurred, and the Chase Defendants tried to make the best of what they were presented with—a late 2019 trial date at the earliest—it is irrelevant that they wanted enough time on the schedule contemplated by the court to

dismiss for failure to bring the case to trial in timely fashion under section 583.320, the Chase Defendants believed that our remittitur following the first appeal was not filed until August 31, 2016, and thus that the three-year deadline ran August 31, 2019, the date they filed their motion to dismiss.

prepare a motion that might avoid trial altogether. The fact the Chase Defendants "indicated" they had no objection bears only on whether they preserved their ability to argue on appeal that the trial setting order was legally erroneous, something they have never suggested. And to say that they "accepted" (maj. opn. *ante*, at p. 11) the date Judge Wood ultimately set beyond the deadline is like saying they "accepted" an evidentiary ruling from her at trial. Of course they accepted it. They had no choice.

Third, if we step back and take the broader procedural context into account, it becomes even clearer why the Nunns' suggestion that "Chase wasn't ready" for trial and sought a date after the three-year deadline because they needed "extra time" is contrary to the record. In the nearly three years that elapsed leading up to the May 2019 case management conference, this case came on for a case management conference eight times and eight times the Nunns failed to request the setting of a trial date.[3] As of May 2019, the Nunns—continuing a pattern of delay that had been going on

---

[3] For the eighth case management conference, the one at issue in this appeal, on May 16, 2019, the Nunns did not even bother to file the required case management conference statement in advance of the conference. That form of statement (Judicial Council form CM-110) required them to report to the court whether there was any basis for trial preference. Had they done so, answering the question yes as was plainly the case—not only was the three-year deadline rapidly approaching but the Nunns were both well over seventy years of age at the time (see § 36, subds. (a) & (e))—the issue presented in this appeal would never have arisen.

4

for years[4]—repeatedly failed to appear for deposition,[5] thus obstructing the Chase Defendants' plan to bring a summary judgment motion. The pattern that emerges is, at best for the Nunns, one of lethargy, and at worst, one of evasion. Drawing inferences in favor of the order under review, as we must, the most reasonable reading of the record is this: The Chase Defendants, faced with a delay into the final months of 2019—a delay that was brought about not because either party requested it, but because no earlier date appears to have been available on the court's calendar—simply wished to make sure there was enough time on the trial schedule set by the court so that they would not face a repeat of the situation in Spring 2019, with the Nunns once again refusing to appear for deposition and running the clock out on a motion for summary judgment. We ought to credit the trial court's

---

[4] The property at issue in this wrongful foreclosure case is not the Nunns' primary residence, but a rental property. The Chase Defendants argued in their motion to dismiss that "the reason Plaintiffs have failed to diligently move . . . forward is because their primary objective was not to get to trial, but rather to drag the litigation out as long as possible so that they could continue to collect[] [rent] . . . without having made a loan payment . . . in nearly ten years."

[5] The Nunns failed to appear for noticed depositions on March 19, 2019 (Gerald Nunn) and March 20, 2019 (Judith Nunn), respectively; April 17, 2019; and May 17, 2019. Each time they claimed medical inability due to the stress of sitting for deposition. Granting a motion to compel after the third non-appearance, Judge Langhorne took note of a newspaper article published May 18, 2019, explaining that "[t]he article shows the Nunns protesting with a large banner in front of a home and [reports that] they are fighting to reclaim the property . . . ." She questioned whether the act of "engaging in a protest of the very case supposedly causing them stress may itself increase and exacerbate [their] purported stress," and ruled that "in light of this evidence, and the limited information provided in the doctors letters, the Court finds the Nunns have made an insufficient showing of medical inability to sit for their requested depositions."

ability to see and account for things like this, rather than accept spin from the Nunns that is designed to justify reversal.

## 2. We Should Defer to the Trial Court's View of the Record

Because this appeal turns on inferences the majority draws from an ambiguous record, we should resolve it under ordinary standard of review principles. "Stipulations under [former] section 583 . . . are no different from other contracts [citation] and are subject to the same rules of construction." (*J. C. Penney Co. v. Superior Court* (1959) 52 Cal.2d 666, 669 (*J. C. Penney*).) Contracts require mutual assent. No contract could have been formed here because the January 13, 2020 trial date was imposed on the parties, not produced by their mutual assent or choice. Because Judge Wood recognized this basic reality and rejected the Nunns' proposal that she certify language stating that she set a trial date that all counsel "agreed to," we have no power to second-guess her and find an agreement on appeal.

Even if, sitting as fact finders, we were inclined to think the "words and actions by the parties" at the May 2019 case management conference "constitute objective evidence of an agreement to set the trial for a specific date . . . beyond the three-year deadline" (maj. opn. *ante*, at p. 14)—I do not, but I will accept the majority's contrary assessment for argument's sake—we must still affirm because there is reasonable and credible evidence of solid value pointing the other way, and thus the substantial evidence standard dictates the correct outcome. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 627–629, 633 [substantial evidence standard requires affirmance of trial court's determination that counsel's on-the-record colloquy

6

with the court concerning the timing of arbitration evidenced no objective manifestation of intent to extend the five-year deadline].)[6]

The majority's willingness to find it was error to deny the Nunns' motion to correct the minutes is even more mystifying than its disregard of the substantial evidence standard. Judge Langhorne's determination that there was "nothing to correct" fell well within the bounds of reasonableness and violated no legal principle. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957 [no abuse of discretion where a decision "falls within the permissible range of options set by the applicable legal criteria"].) Her decision to deny the Nunns' correction request was not only consistent with Judge Wood's later certification of the settled statement, but the specific "correction" the majority faults her for refusing to make—declining to accept a revision of the minutes to show that Judge Wood set the January 2020 date by "agreed" order—went beyond her power to order a nunc pro tunc correction "to make [the court's] records conform to the actual facts" (*Siegal v. Superior Court* (1968) 68 Cal.2d 97, 101).

Based on the precedent the majority cites in conceding the wide latitude trial courts enjoy when dealing with requests to correct clerical error short of nunc pro tunc entry of an order (*Conservatorship of Tobias* (1989) 208 Cal.App.3d 1031, 1034), Judge Langhorne's denial of the Nunns' motion

---

[6] See *Preiss v. Good Samaritan Hospital* (1959) 171 Cal.App.2d 559, 564 ("There is a conflict between the declaration of defendant's counsel and the affidavit of plaintiff's counsel as to whether any oral stipulation had been entered into for a continuance beyond the five-year period. In granting the motion to dismiss, the court impliedly found that no such stipulation had been entered into. ' "An appellate court will not disturb the implied findings of fact made by a trial court in support of an order, any more than it will interfere with express findings upon which a final judgment is predicated. When the evidence is conflicting, it will be presumed that the court found every fact necessary to support its order that the evidence would justify." ' ").

7

to correct the minutes was within her discretion. Indeed, I would go further and say it would have been an abuse of discretion to *grant* the motion. (*Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 890–892 [reversing "nunc pro tunc order [that] was not made to cure a clerical error or omission in the order originally rendered, but was made solely to remedy perceived judicial error"].) To the extent a minute order diverges from the proceedings it purports to memorialize, it is presumed to be the product of clerical error. (*People v. Mesa* (1975) 14 Cal.3d 466, 471.)[7] Because the Nunns argued that the minutes of the May 16, 2019 case management conference provided an incomplete summary of what was discussed in the colloquy with Judge Wood that day—not that the minutes mistakenly showed Judge Wood ordering one thing, when she intended another—they alleged clerical error. I fail to see how it could possibly be an abuse of discretion for Judge Langhorne to deny an after-the-fact request for a better clerical summary in the minutes of what happened at the May 2019 case management conference. The Nunns did not contend anything in the minutes was wrong; they contended the minutes

---

[7] Clerical error occurs when the record fails to reflect what the court actually ordered (*Hamilton v. Laine, supra*, 57 Cal.App.4th at p. 891), while judicial error occurs when the record reflects what the judge actually ordered, but fails to reflect what she "ought to have" ordered. (*Estate of Eckstrom* (1960) 54 Cal.2d 540, 545–547.) The line of cases drawing this distinction typically involves whether a court has nunc pro tunc power to revise a prior order. To state the rule generally, if the error is judicial, the answer is no; if it is clerical, the answer is yes. The language the majority relies upon from *Carpenter v. Pacific Mut. Life Ins. Co.* (1939) 14 Cal.2d 704, 708–709 (*Carpenter*) (maj. opn. *ante*, at p. 18)—which involved the vacatur of an order of dismissal two years after it was entered in the minutes on the ground that the dismissal was never ordered—addresses the power of the original judge who issued the order to decide whether the error was clerical or judicial. That judge's view about the error being clerical, the court held, is " 'conclusive.' " (*Id*. at p. 709.) No such issue is presented here.

8

should be enhanced.  Rather than seek correction of what the record showed *the court* ordered, they were looking for a summary more to their liking of what *the parties* said and did.  If the Nunns wanted a fulsome summary of this kind, they should have arranged for a court reporter.

The majority criticizes Judge Langhorne for denying the minutes correction motion on "erroneous procedural grounds" (maj. opn. *ante*, at p. 19), but of course when reviewing for abuse of discretion we review the result not the reasons.  (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19.)  And in any event, not only was Judge Langhorne right on the merits to reject a request to transform the minutes correction process into a retroactive request for better clerical notetaking, but there was nothing procedurally improper about what she did either.  The Nunns, as appellants, bear the burden of showing that they requested their motion be assigned to Judge Wood and that she was available to decide it.  They cannot meet that burden because they made no such request.  When record correction requests are decided by a judicial officer other than the one who presided at the proceeding in question—as they often are, of necessity—a variety of sources may be called upon to evaluate the request, including a declaration or testimony from the judge who allegedly made the order (*Estate of Doane* (1964) 62 Cal.2d 68, 70–71), the judge's handwritten notes (*In re Roberts* (1962) 200 Cal.App.2d 95, 98; *Carpenter*, *supra*, 14 Cal.2d at pp. 709–710), the court reporter's transcript or declaration (*Nathanson v. Murphy* (1957) 147 Cal.App.2d 462, 468; *Carpenter*, at p. 710), or declarations from attorneys present when the decision was rendered (*Nathanson*, at pp. 467–468).

Whether Judge Langhorne had "first-hand knowledge" of the May 16, 2019 case management conference (maj. opn. *ante*, at p. 17) is therefore irrelevant.  She had before her a full set of declarations from the lawyers who

9

attended the May 16, 2019 case management conference as well as from the Nunns themselves. The Nunns take the position the corrections they sought were relevant to the arguments they wished to make on appeal, but that is what the settled statement process is designed for. The problem the Nunns faced, and still face, is that if we apply ordinary standard of review principles, the facts in the settled statement are insufficient to demonstrate that the January 13, 2020 trial date was set by agreement. Obviously, we cannot charge Judge Langhorne with a duty to predict we would change the law on appeal. And unless we are prepared to say it was unreasonable for her to conclude based on prevailing law there was no "oral agreement" to extend the three-year deadline (*Cahill v. San Diego Gas & Electric Co., supra,* 194 Cal.App.4th at p. 957 ["there is no abuse of discretion requiring reversal if there exists a reasonable or fairly debatable justification under the law for the trial court's decision"])—a topic I shall discuss in depth in the next section—it cannot have been an abuse of discretion for her to deny the minutes correction request.

On the record Judge Langhorne had before her, what is most significant about these declarations is what they do not say. None of them purports to say that the Chase Defendants requested a trial date after the three-year cut-off, or were not ready for trial in May 2019. Nor do any of the declarations state that Judge Wood chose to look to the end of 2019 for a trial date *because of* the Chase Defendants' desire to bring a summary judgment motion or need for discovery. These are the critical facts the Nunns rely upon here, and they are most definitely disputed, as shown by the fact the Chase Defendants opposed placing the inaccurate statement that their counsel "agreed" to a January 2020 trial date in the minutes by correction or in the settled statement by certification. There is a reason the declarations omit

10

these disputed facts:  They are hindsight inferences that the Nunns' new lawyer, Charles Dell'Ario, who replaced Ronald Freshman and who did not attend the crucial May 2019 case management conference, invites us to draw.  By taking up that invitation, my colleagues are not relying on Judge Wood's account of the proceedings.  (Maj. opn. *ante*, at pp. 17–19.)  They are relying on the Nunns' account.  The only declaration that said anything about anyone agreeing on anything at the May 16, 2019 case management conference was from Judith Nunn, who recounted from her lay perspective what she observed in a judicial proceeding.  She declared that, as she understood it, the "lawyers agreed" to the January 13, 2020 date.  But that happens to be the very language Judge Wood struck when asked to certify it in the settled statement.  It is odd, but telling, that the majority suggests Judge Langhorne erred by refusing to accept this version of events.  (Maj. opn. *ante*, at pp. 17–19.)

## B. *The Law*

Lying behind the differences I have with the majority about the proper reading of the record in this case is a sharp departure by my colleagues from more than a century of settled case law.  No case—until today—has implied from bits and pieces of the parties' words and conduct at a trial setting conference an oral agreement to extend a mandatory trial deadline.  I believe the majority's holding on this point will have significant unintended consequences.  Under the new rule we announce today, a plaintiff faces little or no risk for standing mute at a trial setting conference in the face of an imminent statutory trial deadline, safe in the assumption that the defendant's acquiescence to any trial date set without objection will " 'necessarily' " amount to an agreed extension of the deadline (maj. opn. *ante*, at p. 7).  That, in my view, undermines the independent responsibility trial

11

courts have to manage delay.  (See Cal. Stds. Jud. Admin., § 2.1(a)–(b).)  But what is perhaps most unfortunate is that the step the majority takes here is unnecessary.  The answer to the statutory interpretation question framed for decision here may be found in established precedent going back many decades.  All we need to do to understand the meaning of an "oral agreement" under section 583.330, subdivision (b), is to apply the law as our predecessors have given it to us, rather than reinvent it in the guise of statutory interpretation.

Because I believe a course correction is as necessary as it is inevitable, whether on review in this case or in some future case, I shall explain below in considerable detail exactly where the majority's opinion is legally incorrect, unpeeling the errors layer by layer.

## 1.  The Statute and the Majority's Interpretation of It

I begin with the text of the statute.  Section 583.330 provides that "[t]he parties may extend the time within which an action must be brought to trial pursuant to this article" by two "means," either by "written stipulation" under subdivision (a) or by "oral agreement" under subdivision (b).  Because there is no contemporaneous record of any "oral agreement" having been made on May 16, 2019—such an oral agreement must be "entered in the minutes of the court or a transcript"—the majority's reasoning collapses with its mistaken analysis of Judge Langhorne's denial of the Nunns' motion to correct the minutes.  The statute's textual requisites for an "oral agreement" have not been met.  This appeal could have and should have been resolved in a brief unpublished affirmance on that issue alone.  (*Preiss v. Good Samaritan Hospital*, *supra*, 171 Cal.App.2d at p. 563.)

The absence of any contemporaneous record of an "oral agreement" is the most conspicuous of the errors in my colleagues' analysis, but my greater

12

concern is with their treatment of the pertinent case law. Our Supreme Court decided in 1923 that anyone seeking to rely on an agreed extension to the statutory time to bring a case to trial, whether written or oral, must meet the burden of proving such an agreement by "clear and uncontrovertible evidence." (*Miller & Lux, Inc. v. Superior Court* (1923) 192 Cal. 333, 339–340 (*Miller & Lux*).) Ever since *Miller & Lux* was decided, this heightened standard of proof has been elemental to the law governing dismissal for failure to bring an action to trial within prescribed statutory timeframes. If *Miller & Lux* is to be declared outmoded, that should be done openly—and not by us—rather than by treating the holding there as if it supports a reversal on this record, when it plainly does not.

Stating that it finds guidance in *Miller & Lux*, the majority holds that a defendant's "acceptance" of a trial date after the statutory three-year period under section 583.320 "necessarily" implies an agreement to extend the statutory period. It concludes by neatly tying up the logic, claiming consistency with "precedent" under the "written stipulation" prong of section 583.330, subdivision (a)—actually one case, *Munoz v. City of Tracy* (2015) 238 Cal.App.4th 354 (*Munoz*)—and with legislatively declared policies codified in section 583.130 (prioritizing cooperation in bringing cases to trial and "the right of parties to make stipulations in their own interests" over the competing policy of timely prosecution). (Maj. opn. *ante*, at p. 9.)

There is much to unpack here, but the main problem is that, far from being supported by *Miller & Lux* and the generations of precedent building upon it, the majority turns *Miller & Lux* on its head. Without accounting for differences in the text and structure of section 583.330 that justify why written extension agreements and oral extension agreements have always been treated differently—as is plainly evident in *Miller & Lux* itself—the

13

majority extends the holding in *Munoz* to oral agreements, undermining more than a hundred years of case law in the process.  Tying this flawed analysis to legislatively declared policy does not save it; section 583.130 simply codifies prior judicial declarations of policy in longstanding case law. If the settled understanding of *Miller & Lux* over the last one hundred years began to conflict with these policy statements at some point, no one has discovered it until today.  And in any event, any reappraisal of *Miller & Lux* as a matter of policy is something only the Supreme Court can undertake.

### 2.  The 1984 Statutory Revision

Section 583.310 sets forth the requirement of bringing a case to trial in five years, and section 583.320 lays out the three-year deadline following appeal and remand.  Section 583.360, subdivision (a) makes dismissal mandatory for a violation of either statute in the absence of a statutory exception.  "The mandatory dismissal statute is founded upon the policy of the diligent prosecution of actions.  [Citation.]  A plaintiff . . . has the duty ' "at every stage of the proceedings to use due diligence to expedite his case to a final determination." ' " (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 589.)  " ' "[T]he purpose of the [five-year or three-year] statute is 'to prevent avoidable delay for too long a period.' " ' " (*Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 328 (italics omitted).)  "The burden of avoiding the consequences of section 583[.320] is cast on the party seeking to prevent a dismissal thereunder." (*Anderson v. Erwyn* (1966) 247 Cal.App.2d 503, 506.)

From early on following its adoption in 1905, former section 583 was understood as giving a defendant a "right" to a dismissal if the plaintiff missed his or her five-year or three-year deadline for bringing the case to trial.  (*Miller & Lux, supra*, 192 Cal. at p. 338.)  Still today, the current

14

mandatory dismissal statutes establish the "trial court's duty to enter a mandatory dismissal, and the defendant's right to obtain one for lack of prosecution." (*M & R Properties v. Thomson* (1992) 11 Cal.App.4th 899, 902.) "Thus, unless some specified exception applies, a trial court has a mandatory duty to dismiss an action and a defendant has an absolute right to obtain an order of dismissal, once five years has elapsed from the date the action was commenced." (*Id.* at p. 903.) The same rule applies if the plaintiff fails to bring the action to trial within three years after the filing of a remittitur after an initial appeal. (§ 583.320.)

Former section 583 was only one of a number of related statutes governing the duty of diligent prosecution, all dating from the early twentieth century. Together as a package, these statutes were revised in 1984. (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1090 (*Gaines*); see Stats. 1984, ch. 1705, § 5, pp. 6176–6180.) "The legislative history makes clear that the revision was prepared by the California Law Revision Commission. The Legislature and commission intended largely to codify, not supplant, the quasi-common law developments in this area that had evolved over the preceding decades. (See Assem. Com. on Judiciary, Rep. on Sen. Bill No. 1366 (1983–1984 Reg. Sess.) as amended July 3, 1984, p. 3 [' "The major purpose of the bill is to clarify ambiguities in the law, to bring the statutes into conformity with case law interpreting them, and to reconcile discrepancies in statutes and cases." ']; Revised Recommendation Relating to Dismissal for Lack of Prosecution (June 1983) 17 Cal. Law Revision Com. Rep. (1984) p. 916 [(1984 Cal. Law Revision Rep.)] . . . .)" (*Gaines, supra,* 62 Cal.4th at p. 1090.)

Before the 1984 revision, courts developed a series of exceptions to former section 583, reading the exceptions into the statute by implication.

Lack of diligent prosecution may be excused, courts held, where circumstances beyond the plaintiff's control render it impossible or impracticable to bring a case to trial in timely fashion.[8]  Applying equitable principles, other courts invoked the doctrine of estoppel where a defendant engaged in conduct that lulled the plaintiff into believing timely prosecution was not required,[9] or the doctrine of waiver where a defendant engaged in conduct inconsistent with an intention to insist upon timely prosecution.[10]  To guard against rigid and mechanical application of the statute, the case law also made clear that, as a general matter, the policy of diligent prosecution is subordinate to preferred policies favoring decision on the merits[11] and giving effect to agreed arrangements between the parties.[12]  Subject to a handful of clarifying changes, what the Legislature did in 1984 was to codify and restate this decisional law.[13]  With respect to section 583.330, subdivision (b), in

---

[8]  *Christin v. Superior Court* (1937) 9 Cal.2d 526, 533.

[9]  *Tresway Aero, Inc. v. Superior Court* (1971) 5 Cal.3d 431, 437–438 (*Tresway*).

[10]  *Southern Pacific Co. v. Seaboard Mills* (1962) 207 Cal.App.2d 97, 104.

[11]  *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.

[12]  *General Ins. Co. v. Superior Court* (1975) 15 Cal.3d 449, 454.

[13]  Responding to the recommendations of the Law Revision Commission, the 1984 revisions clarified the language of former section 583 in five principal ways.  First, the revised statutory scheme—set forth in sections 583.110 through 583.360—expressly recognizes exceptions to mandatory dismissal that had been implied by judicial construction, and expressly codifies statements of policy that were formerly discernible only in case law.  (1984 Cal. Law Revision Rep., *supra*, at pp. 915–937.)  Second, section 583.140 expressly states that nothing in the revised statutory scheme "abrogates or otherwise affects the principles of waiver and estoppel," thus confirming the continuing applicability of cases that apply these equitable principles in construing the statute.  (1984 Cal. Law Revision Rep., at

16

particular, the Law Revision Commission explicitly stated that the statute "codifies existing case law."[14]  In construing subdivision (b), therefore, "a substantial body of case law [must] guide[] our analysis."  (*Gaines*, *supra*, 62 Cal.4th at p. 1090.)

### 3.  **Section 583.330 and the Case Law It Codifies**

a. *The Statute and the Case Law Treat Written Stipulations and Oral Agreements Differently*

The majority expresses concern for ensuring that section 583.330, subdivision (a), dealing with "written stipulation[s]," and section 583.330, subdivision (b), dealing with "oral agreement[s]," are interpreted in a congruent manner.  (Maj. opn. *ante*, at pp. 8–9.)  But section 583.330, on its face, and in its structure, treats written stipulations and oral agreements differently.  In the case of a written stipulation under section 583.330, subdivision (a), there is no requirement that the court have any knowledge or awareness of the extension at the time the parties enter into it.  By contrast, an extension of the statutory deadline effected by oral agreement under section 583.330, subdivision (b) must be brought to the court's attention when

---

pp. 929–930, comment on proposed § 583.140.)  Third, section 583.330 overrules prior case law holding that, due to the omission of any language referring to extension by "written stipulation" in the statute dealing with the three-year period following issuance of remittitur, only the five-year period could be extended by agreement.  (1984 Cal. Law Revision Rep., at p. 935, comment on proposed § 583.330.)  Fourth, section 583.330 makes clear that extensions by written and oral agreement may be effectuated in both the five-year and three-year scenarios.  (1984 Cal. Law Revision Rep., at p. 935, comment on proposed § 583.330.)  And fifth, the requirement in former section 583 that "written stipulations" to extend must be filed with the court was deleted.  (1984 Cal. Law Revision Rep., at p. 935, comment on proposed § 583.330.)

[14]  1984 Cal. Law Revision Rep., *supra*, at page 935, comment on proposed section 583.330.

entered.  Such an agreement must be "made in open court" and either "entered in the minutes of the court" or memorialized in a "transcript." (§ 583.330, subd. (b).)

These are not arbitrary formalities.  The case law explains their purpose.  They are there to minimize after-the-fact disputes about whether an agreement of the parties was actually made in the first place.  As the Supreme Court explained, the *Miller & Lux* clear statement in open court protocol—read into former section 583 and carried forward in section 583.330, subdivision (b)—is designed to "preclude all disputes, with their attendant charges and countercharges of overreaching and unethical conduct, by a requirement that *clear and uncontrovertible evidence* be presented to the court that *the statutory time was deliberately intended to be extended by both parties*."  (*Miller & Lux, supra*, 192 Cal. at p. 340 (italics added); accord *Miles v. Speidel* (1989) 211 Cal.App.3d 879, 883.)  Under *Miller & Lux*, simple agreement on a trial date that, without either party realizing it, happens to be beyond the deadline, is not enough.  The parties must have in mind the setting of a date they both understand extends "the statutory time."  (*Anderson v. Erwyn, supra*, 247 Cal.App.2d at p. 506; *Rosenfelt v. Scholtz* (1936) 17 Cal.App.2d 443, 445.)  This test applies not just to the substance of what must be proved (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811 [" '[c]onsent is not mutual, unless the parties all agree upon the same thing in the same sense,' " quoting Civ. Code, § 1580]), but also to the form in which such agreements must be made. Agreements to extend the "statutory time" may be either written or oral, but if oral, they must be confirmed on the record in open court.

The stringent *Miller & Lux* clear statement protocol governing agreements to extend the statutory three-year and five-year deadlines is not

18

an artifact that may be discounted as a relic of the past or treated as an anomaly. *Miller & Lux* was consistently cited in cases applying former section 583 in the decades after it was decided (e.g., *Camille's Corp. v. Superior Court* (1969) 270 Cal.App.2d 625, 628–629; *Bank of America etc. v. Superior Court* (1937) 22 Cal.App.2d 450, 452), and after the repeal of former section 583 in 1984, it is still cited in cases decided under section 583.330. (E.g., *Gaines, supra,* 62 Cal.4th at pp. 1092–1093; *Miles v. Speidel, supra,* 211 Cal.App.3d at p. 883.) The continuing vitality of *Miller & Lux* should not be surprising. Strictly enforced formal protocols for certain kinds of agreements made in the course of litigation have been a common feature of California civil procedure since well before *Miller & Lux*.[15] Thus, section

---

[15] E.g., Code of Civil Procedure section 283, subdivision (1) (stipulations of counsel in civil actions must be "filed with the clerk" or "entered upon the minutes of the court"), see *Smith v. Whittier* (1892) 95 Cal. 279, 287 (when an "attorney . . . enter[s] into an agreement for the purpose of binding his client, there shall be such a record thereof as will preclude any question concerning its character or effect"); Code of Civil Procedure section 664.6, subdivision (a) (authorizing entry of judgment upon terms of settlement made "in a writing signed by the parties outside the presence of the court or orally before the court"), see *Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 37 ("[b]ecause of its summary nature, strict compliance with the requirements of § 664.6 is prerequisite to invoking the power of the court to impose a settlement agreement"); Family Code section 2550 (manner of division of community estate upon terms of oral or written agreement), see *In re Marriage of Huntley* (2017) 10 Cal.App.5th 1053, 1062 ("[t]he requirement of [Fam. Code §] 2550 that an agreement either be written or orally stated in open court is strictly construed"). The justifications for conditioning enforceability on a writing or oral agreement confirmed in open court vary in each of these settings, but avoiding the need to resolve after-the-fact disputes is common to all of them. (*Smith v. Whittier, supra,* 95 Cal. at p. 287 [Code Civ. Proc., § 283, subd. (1)]; *Levy v. Superior Court* (1995) 10 Cal.4th 578, 585 [Code Civ. Proc., § 664.6]; *In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 204 [Fam. Code, § 2550].)

19

583.330, subdivision (b)—along with the case law it codifies and restates—has plenty of company in the statute books.

b. *Miller & Lux v. Superior Court*

It is ironic that the majority relies on *Miller & Lux* because that much-cited case gives us the classic statement for why courts have always taken a strict approach to proving up orally agreed extensions of the statutory time to commence trial under former section 583. The full background of the case is worth considering in some detail. It arose when, after three lawsuits were filed by the plaintiffs in the years 1905 through 1908, the plaintiffs entered a stipulation proposed by the defendants providing that the setting of trial in these cases would take place only after a related case, known as the "*Turner* case," was prosecuted to judgment. (*Miller & Lux*, *supra*, 192 Cal. at pp. 335–337.) But because the *Turner* case was beset by protracted delays, the trial dates in the plaintiffs' cases were not set until 1920, many years after the expiration of the statutory deadline for commencing trial. (*Ibid.*) The plaintiffs took the position that the parties' agreement that the trial setting in their case trail the trial in the *Turner* case implicitly extended the five-year deadline to commence trial. (*Id.* at pp. 340–341.)

That frames the precise issue addressed in *Miller & Lux*, but another relevant aspect of the case is its legal backdrop. While the long-running *Miller & Lux* litigation was still pending in the trial court, the Supreme Court decided *Larkin v. Superior Court* (1916) 171 Cal. 719, 722. In *Larkin*, the court suggested in dicta that it was a "serious question" whether an oral agreement recited in open court and entered upon the court minutes might be given the same force and effect as a written stipulation under former section 583. (*Larkin*, at p. 722.) Citing *Larkin*, the *Miller & Lux* court accepted for purposes of analysis that oral agreements confirmed in open court may be

20

treated as equivalent to written stipulations extending a statutory trial deadline.[16] (*Miller & Lux, supra*, 192 Cal. at p. 340.) On that assumed premise, the *Miller & Lux* court rejected an attempt to prove up such an agreement. The holding in *Miller & Lux* thus cuts directly against the Nunns. And the position the Nunns take here fails for the same reason it failed in *Miller & Lux*: They have not presented "clear and uncontrovertible" evidence of deliberate, mutual intent by the parties to extend the statutory deadline, proved up based on an agreement recited in open court. (*Ibid.*)

Under a fair reading of *Miller & Lux*, we must be mindful of what the Supreme Court said in explaining why no oral agreement was shown on that record. The *Miller & Lux* defendants' stipulation to the setting of trial only upon completion of all proceedings in the *Turner* case—in essence, an open-ended extension of time that made no mention of the five-year deadline—fell "far short of attaining the dignity of an oral stipulation in open court and certainly [did] not come within the category of written stipulations." (*Miller & Lux, supra*, 192 Cal. at p. 340.) "The waiver of defendants' right to dismiss and a consent to an indefinite continuance can only be *implied* or *inferred* from such conduct," the court observed. (*Ibid.*) "To hold that this inferential consent is the same as a written stipulation would be to give to this section a

---

[16] I will address this aspect of the evolution of *Miller & Lux* in greater detail below, but in short, decades later, in *Woley v. Turkus* (1958) 51 Cal.2d 402 (*Woley*), the Supreme Court expressly adopted the assumed premise of the *Miller & Lux* holding, announcing in 1958 that oral agreements stated clearly in court minutes are enforceable. (*Woley*, at pp. 408–409.) The first case to hold that oral agreements to extend statutory trial deadlines are enforceable, if made in open court and recorded in court minutes, was *Govea v. Superior Court* (1938) 26 Cal.App.2d 27 (*Govea*). The Supreme Court endorsed *Govea* in *Woley, supra*, 51 Cal.2d at page 408, citing it with approval and applying it. (See 1984 Cal. Law Revision Rep., *supra*, at p. 917, fn. 49.)

21

strained construction, which, while it might relieve the harshness of the result in these particular cases, would be to render futile the salutary provisions of this section intended to secure preciseness of practice and procedure.  The very harshness of the rule would seem to be intended to put the plaintiff on the *qui vive* to secure irrefutable evidence of the defendant's consent to an extension of the statutory time." (*Ibid.*)

Because all of the same things may be said here about recognizing an extension agreement by "inferential consent" (*Miller & Lux, supra,* 192 Cal. at p. 340), I draw a very different lesson from *Miller & Lux* than the majority does.  Though today the exact protocol governing written stipulations to extend the statutory deadline under section 583.330, subdivision (a) is somewhat more lax than it is for oral agreements under section 583.330, subdivision (b)—since written stipulations need not be brought to the attention of the court when made—the enduring significance of *Miller & Lux* is quite simple:  The burden of proving such an agreement, whether written or oral, remains a demanding one.  A qualifying agreement need not be written, but it must be express. (*Miller & Lux, supra,* 192 Cal. at p. 340.)  We do not imply it from conduct or infer it from silence. (*Ibid.*)  And the formalities, the "preciseness of practice and procedure" (*ibid.*), matter.

c. <u>*Wright v. Groom Trucking Co.*</u>

*Wright v. Groom Trucking Co.* (1962) 206 Cal.App.2d 485, 495 (*Wright*), the earliest of a series of four Court of Appeal cases (see fn. 17, *post,* pp. 24–25) to address the issue before us, is on point and should control the outcome here.  Just as the Nunns contend that statements memorialized in the settled statement may be read as an "agreement" to extend an unmentioned statutory deadline, the plaintiff in *Wright* argued the same thing, focusing on language in a pretrial conference order setting a trial date beyond the five-

year deadline.  (*Id*. at p. 490.)  In an opinion written by then First District Court of Appeal Justice Raymond Sullivan, a panel of this court disagreed. "By emphasizing certain words of the order," the court explained, the "plaintiffs suggest that evidence of [a] stipulation of the parties can be found in the recital that the estimated trial time was four days, that a jury was demanded by defendants, and that notice of trial was waived."  (*Id*. at p. 492, italics omitted.)  But these recitals showing acceptance by the parties that a trial would take place after the deadline—as confirmed by the defendant's affirmative conduct in providing an estimate of the length of trial, demanding a jury, and waiving notice—did not amount to an agreed extension.  (*Id*. at pp. 491–492.)  The trial date was imposed, not set by agreement.  Consent of the parties was not required for the setting of the trial date, the court pointed out.  "It is clear that the above words upon which plaintiffs lay great stress and in which they find great significance do not, either singly or together, amount to" a stipulation to extend the five-year deadline, the court said.  (*Id*. at p. 492.)

Though the majority suggests by innuendo that the Chase Defendants' argument in this case rests on a quibble over the fact that no one uttered the word "stipulation" (maj. opn. *ante*, at p. 14), it does not.  The Chase Defendants make no argument that the deficiency in the record here is the parties' failure to employ some particular form of terminology, and that was not the issue in *Wright* either.  The *Wright* court relied on *J. C. Penney*, then the most recently decided case from the California Supreme Court under former section 583.  (*Wright*, *supra*, 206 Cal.App.2d at p. 492.)  This aspect of *Wright* is particularly significant because *J. C. Penney* explicitly reaffirms the *Miller & Lux* holding that, to be enforceable under former section 583 (and now section 583.330), an agreement must "extend in express terms the time

23

of trial to a date beyond the five-year period or expressly waive the right to a dismissal." (*J. C. Penney, supra,* 52 Cal.2d at p. 669.)  Justice Roger Traynor's opinion for the court in *J. C. Penney* rejected an argument from the plaintiff that a written stipulation to continue the pretrial conference in that case on an open-ended basis could be treated as equivalent to a written stipulation to extend the five-year deadline, even though such an intention was not expressly stated in the language the parties employed.  (*Id.* at pp. 670–671.)  The plaintiff conceded that the requirement to show express, deliberate intention to extend the five-year deadline defeated its argument, but asked the Supreme Court to "reappraise[]" *Miller & Lux* and its progeny, which the court refused to do.  (*Id.* at p. 669.)

It is beside the point that *Wright* was decided "before the statute allowed parties to extend a trial deadline by oral agreement."  (Maj. opn. *ante,* at p. 14.)  Oral extension agreements were enforceable then, as they are enforceable today, so long as, in the words of *Miller & Lux,* they "attain[] the dignity of an oral stipulation in open court" and thus "come within the category of written stipulations."  (*Miller & Lux, supra,* 192 Cal. at p. 340.)  If it were correct, as the majority implies, that the enforceability of oral agreements to extend the statutory deadline was an innovation of section 583.330, subdivision (b), the *Wright* court would simply have said the alleged agreement there was not in writing, without more.  But the court said far more, discussing at length why the defendant's words and actions as memorialized in the pretrial order did not meet the *Miller & Lux* standard.[17]

---

[17]  Three other cases to the same effect are *Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262, 1269, footnote 3 (*Sanchez*) (finding no stipulation "in express terms" to extend five-year deadline of January 10, 2002, where the parties appeared at a September 25, 2001 trial setting

24

(*Wright*, *supra*, 206 Cal.App.2d at pp. 492–493.)  It did so because, by the time *Wright* was decided in 1962, the enforceability of clearly expressed oral extension agreements made in open court had been established for more than two decades under *Govea*, arguably going even further back to *Miller & Lux*.

In the end, the nub of the problem the Nunns face is that, having failed to say anything in open court about an imminent statutory deadline to try

conference, no one mentioned the approaching deadline, and despite the parties' request for a December 18, 2001 trial date, the court set a date of January 29, 2002, without objection by either side), *Taylor v. Shultz* (1978) 78 Cal.App.3d 192, 195, 197 (defendant's conduct in appearing for a trial setting conference before the expiration of the five-year deadline, agreeing to attend a mandatory settlement conference after the deadline, and requesting a later trial date, was not "tantamount to a written stipulation or oral stipulation entered in the minutes extending the five-year period"), and *Singelyn v. Superior Court* (1976) 62 Cal.App.3d 972, 975 (defendant's conduct in attending trial setting conference four months before expiration of five-year deadline where the court set a trial date one day after the deadline, "without objection by either side," did not bar it from obtaining mandatory dismissal under former section 583).

The majority brushes aside *Sanchez* on the ground that its discussion of this point (*Sanchez*, *supra*, 109 Cal.App.4th at p. 1269, fn. 3) appears "peripherally, in a footnote" while the body of the opinion focuses mainly on the impracticability exception.  (Maj. opn. *ante*, at p. 13.)  However the *Sanchez* opinion is characterized, the plaintiffs' claim of an oral agreement in that case was squarely presented—there was a written stipulation requesting a date within the five-year deadline, but the plaintiff argued the defendant's acquiescence to the setting of a final status conference *after* the deadline amounted to consent—so the court's resolution of the issue was necessary to the decision.  The court dealt with the issue by addressing it in a footnote because, until today, attempts to imply oral agreements from conduct and statements at pretrial conferences have been viewed as so plainly contrary to *Miller & Lux* that, except for the plaintiff in *J. C. Penney*—which forthrightly and unsuccessfully asked that *Miller & Lux* be overruled—plaintiffs have tended to advance these arguments as a last resort.  The fact the *Sanchez* court dealt with the issue in a footnote is a sign of how out of step with precedent the majority's holding is, not evidence that *Sanchez* lacks precedential value.

25

this case, they cannot show that anyone was aware of the need for an extension, statutory or otherwise. That leaves them with nothing more than a claim of agreement by inadvertence, which is not only an oxymoron, but as case after case has recognized since *Miller & Lux*, is insufficient to meet the test of deliberate intent to extend a statutory deadline. The plaintiffs in *Wright* had the same problem. As the *Wright* court explained: "No claim is, or on the record could be, made that plaintiffs' counsel called the court's attention to the fact that the trial date it was setting was beyond the five-year period. . . . At the time of the pretrial conference approximately three and one-half months remained. There is no showing or contention that plaintiffs 'took any steps, by motion to advance or otherwise, to have the case specially set within the available period, or that it was impossible to reach said result.' " (*Wright, supra*, 206 Cal.App.2d at pp. 496–497.)

        d.  *Munoz v. City of Tracy*

Without discussing the holdings in *Miller & Lux, supra*, 192 Cal. at page 340, *J. C. Penney Co. supra*, 52 Cal.2d at pages 669–671, and a legion of cases applying the *Miller & Lux* clear statement rule, the majority states that section 583.330, subdivision (b), "does not address what terms comprise an oral agreement extending the trial deadline." (Maj. opn. *ante*, at p. 7.) Section 583.330, subdivision (a) does not address what the term "written stipulation" means either, and no court has ever seen a need to decide that question as a matter of statutory interpretation.[18]

---

[18]  *Wheeler v. Payless Super Drug Stores, Inc.* (1987) 193 Cal.App.3d 1292, 1302 ("The statutes governing dismissal for delay in prosecution do not expressly define the term 'written stipulation' or prescribe the elements of such a stipulation. [Citation.] However, nothing in the legislative history indicates an intention to depart from existing precedents governing the content of such stipulations. [1984 Cal. Law Revision Rep., *supra*, at p. 917.]").

At least no court saw such a need until *Munoz v. City of Tracy, supra,* 238 Cal.App.4th 354, a 2015 Third District Court of Appeal opinion that, until today, has been cited in a published case only once, and there only for a background point concerning the purpose of the statute mandating dismissal for failure to meet the prescribed statutory trial deadlines. *Munoz* holds that, to be effective, a written stipulation extending the date of trial beyond the statutory deadline need not recite section 583.310 or mention the existence of a statutory deadline, since an agreement to a date after the deadline necessarily shows an intent to extend the deadline. Having declared that we must decide the counterpart question for oral agreements under section 583.330, subdivision (b)—never mind that the Legislature told us in 1984 that it was simply restating and codifying prior case law, and that we should look there for the answer—the majority adopts the reasoning in *Munoz* and declares that we should have a unified approach to identifying written extensions and oral agreements to extend. (Maj. opn. *ante,* at p. 9.)

As I shall explain below, I think the majority's reliance on *Munoz* is ill-advised. The result reached in *Munoz* may be correct, to be sure. The language of the written stipulation at issue there appears to meet the *Miller & Lux* standard because, in it, the parties expressed their clear and unequivocal mutual intent to set a trial date past the five-year deadline after the plaintiff had secured a trial date within the deadline. (*Munoz, supra,* 238 Cal.App.4th at p. 357; see *Estate of Thatcher* (1953) 120 Cal.App.2d 811, 814 [same].) Because, by contrast in this case, there was never any established trial date within the deadline and there is no evidence anyone understood anything was being continued or extended, *Munoz* is inapposite. Relying on *Munoz,* and extending it to oral extension agreements, creates problems that are not relevant to written stipulations, since written

stipulations need not be memorialized in open court and may be construed as a matter of law based on their plain language. Without considering these key differences, the majority finds the reasoning in *Munoz* persuasive enough to adopt under section 583.330, subdivision (b), which is unfortunate, because it is the reasoning in *Munoz*, not the result, that is problematic.

*Munoz* begins with the unexceptional premise that, as described by *Miller & Lux* in a background discussion of how former section 583 worked— and section 583.330 works today since it codifies prior law—the parties may enter into a " 'written stipulation . . . expressly waiving the benefit of the section, *or postponing the case to a time beyond the statutory period, [which] would have the effect of extending the statutory period to the date to which the trial was postponed.'* " (*Munoz*, *supra*, 238 Cal.App.4th at p. 360, italics in original, quoting *Miller & Lux*, *supra*, 192 Cal. at p. 338.) In this quotation, by the use of italics for emphasis, *Munoz* recognizes that there are two ways to relieve a plaintiff of the duty of diligence by agreement: The parties may lift that duty in an agreement by which the defendant waives its right to enforce the mandatory trial deadline indefinitely, or they may lift it by increments of time, enlarging the statutory period to bring a case to trial by agreeing on a specific trial date after the statutory deadline.[19] Either one

---

[19] *Larkin v. Superior Court, supra*, 171 Cal. at page 723 ("A stipulation in terms waiving the benefit of this section, or one in terms providing that the time fixed by the section within which trial must be had, shall be extended indefinitely or for a definite time, or a series of stipulations continuing the trial to a date beyond the five year period, might any of them suffice as an answer to a motion to dismiss, and constitute a stipulation in writing that the time (*the five year period*) shall be extended."); see *Koehler v. Peckham* (1936) 11 Cal.App.2d 481 (stipulation to specific trial date after five-year period), cf. *General Ins. Co. v. Superior Court, supra*, 15 Cal.3d at page 452 ("open extension of time to answer or otherwise respond" deprived plaintiff of right

works. *Munoz* reasons that, to make a written stipulation extending the five-year deadline clear, it is not necessary to include bootstrap language waiving the enforceability of the statute *and* agreeing to a specific date beyond the deadline. (*Munoz*, at p. 360.) I have no quarrel with that common-sense proposition, although in this case, the predicate clause in the quotation from *Miller & Lux* is the one that deserves emphasis—" 'written stipulation . . . *expressly* waiving' " (*Miller & Lux*, *supra*, 192 Cal. at p. 338, italics added)—since the word " 'expressly' " captures the actual holding in *Miller & Lux*.

But it is the next step in the *Munoz* court's reasoning that takes a wrong turn and ends up causing things to go badly off track in this case. The majority contends that *Munoz* "[a]ppl[ied] *Miller & Lux* and its progeny." (Maj. opn. *ante*, at p. 8.) That is only partially true. *Munoz* relied on *Miller & Lux* for its initial point focusing on the two ways to extend the statutory deadline by stipulation, but the critical second step of its analysis comes from *Smith v. Bear Valley Milling & Lumber Co.* (1945) 26 Cal.2d 590 (*Smith*), and *Smith* alone. Pivoting to the heart of the issue before it—whether the language of the stipulation at issue was sufficiently clear to meet the *Miller & Lux* standard—the *Munoz* court says this: "Our Supreme Court has found that a stipulation to extend trial to a specific date beyond the five-year period *necessarily* waives the right of dismissal under former section 583." (*Munoz*, *supra*, 238 Cal.App.4th at p. 361.) This ipse dixit is the key to the *Munoz* court's logic, since it renders all verbiage in the written stipulation at issue there unnecessary except the words agreeing on a specific date beyond the five-year deadline. Whether it was necessary to do anything more in *Munoz* than cite to *Estate of Thatcher*, *supra*, 120 Cal.App.2d 811, seems debatable,

---

to take default and prevented defendants from prevailing on motion to dismiss after three years under former § 581a, subd. (c)).

29

but the flaw in the logic of this broader holding as extended to section 583.330, subdivision (b)—fundamentally, the problem is that it rests on a misreading of *Smith*—becomes much more apparent than it is in a subdivision (a) written stipulation case.

### e. *Smith v. Bear Valley Milling & Lumber Co.*

Without delving into whether the phrase "necessarily waives" fits the context we have here, the majority seizes upon *Munoz*'s reading of *Smith* and makes it the linchpin of its own analysis. (Maj. opn. *ante*, at pp. 7–8.) What we are not given, in *Munoz*, or by the majority, is any context from *Smith* to explain why the Supreme Court employed the phrase "necessarily waives." Here is that context. In *Smith*, a few days before the expiration of the five-year statute, which fell November 8, 1942, four defendants as a group agreed in writing to waive their right to move to seek mandatory dismissal for lack of diligent prosecution and further agreed in principle to a trial date beyond the statutory deadline, without specifying the exact date. (*Smith, supra,* 26 Cal.2d at pp. 591–593.)

Pursuant to this stipulation, the parties agreed to a trial date of either December 10, 1942, or to the " 'first available date thereafter' " if December 10 was not convenient to the court. (*Smith, supra,* 26 Cal.2d at p. 592.) The court selected a trial date of March 10, 1943. (*Ibid.*) There was no dispute that that had the effect of extending the five-year period to March 10, 1943, by written stipulation. At the request of the defendants, however, and based on an oral agreement evidenced in correspondence among counsel, the parties agreed to a further postponement, which resulted in the setting of a trial date in June 1943. (*Ibid.*) The dispute in the case arose when two of the defendants tried to back out of the oral agreement. Counsel for these two reneging defendants filed a "unilateral 'stipulation' "

30

with the court conditioning their clients' agreement to continue the March 10, 1943 trial date on a purported reservation of their right to file a mandatory dismissal motion. (*Id*. at pp. 593, 598–599.) In effect, they claimed that the oral extension was invalid because there was no evidence it included a waiver of the defendants' ability to enforce the five-year period by motion for mandatory dismissal (even though the original written stipulation did so).

On review, the California Supreme Court reversed an order of dismissal under former section 583. Although the agreement to further extend the five-year deadline beyond March 10, 1943, was oral, its "essential terms were, in effect, prior to the postponement, reduced to writing, in that they were evidenced without substantial dispute by separate writings signed by the respective contracting attorneys and filed with the court . . . ." (*Smith*, *supra*, 26 Cal.2d at p. 600.) The court did not mince words about what it saw as the impropriety of this attempt to escape a perfectly valid written stipulation to a continuance extending the date for commencing trial to an unspecified future date that all parties understood would be after the five-year deadline. The court rejected the argument that the later oral agreement to a specific trial date was ineffective. The critical fact was that "the [oral] agreement was made in fact; it relates . . . to the admittedly valid first stipulation; and it is evidenced by writings signed by both the contracting attorneys." (*Id*. at p. 601.) "Under such circumstances," said the court, "it would belie the substance of truth and ravage justice to say that the extension of time was not stipulated to or that such stipulation is not 'in writing' within the reasonable contemplation of [former] section 583 of the Code of Civil Procedure." (*Ibid*.)

Unless one takes the view that *Smith* sub silentio overruled *Miller & Lux* and no one noticed until 2015, this holding had nothing to do with

31

whether the parties' words and conduct were clear enough to meet the *Miller & Lux* test. The court's analysis was based on waiver by inconsistent conduct, which is an equitable concept akin to estoppel.[20] Starting from the premise that "the parties . . . stipulate[d] in writing . . . that the time of trial should be extended for a specified (or ascertainable) term beyond the five-year period" (*Smith*, *supra*, 26 Cal.2d at p. 592), the court used the doctrine of waiver to block the two reneging defendants from disavowing their earlier written stipulation. The court focused on the unilateral conduct of these two defendants, not on sufficiency of the evidence to show a mutual understanding of the parties. It cast aside the attempted reservation of rights by these defendants, explaining that the earlier written stipulation was "basically inconsistent with a reservation of . . . rights." (*Id.* at p. 599.) If a "stipulation in writing is made, in compliance with the statute," the court said, not only do the defendants executing such a stipulation "waive their rights to a dismissal based on the agreed postponement but they preclude the court from granting of its own motion a dismissal based on the agreed delay." (*Ibid.*)

*Munoz* mistook the "necessarily waives" language in *Smith* as a statement about the sufficiency of an agreement to extend the statutory trial deadline to a specific date, when, properly understood, it is a statement about intolerably inconsistent conduct. The *Smith* court refused to recognize the validity of the two reneging defendants' purported reservation of the right to bring a dismissal motion, when they had earlier signed a written stipulation giving up that right, conduct that all other parties in the case and their counsel knew of and relied upon. This holding, like many others in the body

---

[20] 2 Pomeroy's Equity Jurisprudence (5th ed. 1941) § 451a, pages 286–287 (Pomeroy).

of waiver and estoppel cases under former section 583, draws upon principles of equity.[21]  What the *Munoz* court fails to see, however—perhaps because it does not discuss *Smith* or consider the actual holding in the case—is that the question whether a clear agreement to extend a statutory trial deadline "necessarily waives" the right to bring a dismissal motion, is a wholly different question than whether such an agreement exists in the first place. The majority repeats the mistake, making it worse by extending the "necessarily waives" language to oral agreements.

Confined to cases decided under section 583.330, subdivision (a), the *Munoz* court's misreading of *Smith* is relatively benign.  Whether the words

---

[21]  In the era *Smith* was decided, the doctrine of waiver was often employed interchangeably with the doctrine of estoppel.  A cogent explanation comes from Justice Benjamin Cardozo, who described the animating principle behind both doctrines as "fundamental and unquestioned." (*R. H. Stearns Co. v. United States* (1934) 291 U.S. 54, 61–62.)  "Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver.  The label counts for little.  Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." (*Ibid.*)  Today, we draw finer terminological distinctions.  We now speak of "waiver," which rests on express relinquishment of a known right, as distinguished from "equitable forfeiture," which is implied waiver by failure to invoke a right. (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 476.)  In both scenarios, the loss of rights rests on intent.  "The intention may be express, based on the waiving party's words, or implied, based on conduct that is ' "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." ' " (*Id.* at p. 475.)  As relevant here, the bottom line is that the pairing of "waiver and estoppel" in section 583.140 indicates a legislative intent to use the term "waiver"—just as I believe *Smith* used the term in 1945—in the sense of equitable forfeiture, which requires conduct by a party so flatly inconsistent with an intent to invoke the right at issue that it induces detrimental reliance by another.

33

employed by the parties in a writing are sufficient to evidence a deliberate intent to extend a mandatory trial deadline can often be decided as a matter of law, as it was in *Munoz*. But it is a different matter altogether to graft *Munoz*'s reasoning onto section 583.330, subdivision (b) in the way the majority does. As noted above, one of a handful of things the Legislature changed in its 1984 revision of former section 583 was to drop any requirement that written agreements under section 583.330, subdivision (a) be filed with the court. (See fn. 13, *ante*, pp. 16–17.) For oral extension agreements, by contrast, the requirement of contemporaneous memorialization in court records was retained, which shows that avoiding after-the-fact disputes remains a matter of greater legislative concern for oral agreements than it is for written agreements and is a significant component of the law the Legislature carried over from *Miller & Lux* in enacting section 583.330.

In its zeal to treat section 583.330, subdivision (a) "written stipulation[s]" the same as section 583.330, subdivision (b) "oral agreement[s]" (maj. opn. *ante*, at p. 9), the majority overlooks the difference in the treatment of written and oral agreements both in the text of the statute and in the precedent the Legislature codified and restated when it enacted section 583.330. Because agreements implied from conduct almost always give rise to factual disputes, our holding today promotes the very problem *Miller & Lux* sought to eliminate. With the lawyers in this case now squaring off on appeal over what was said and done in open court two years ago before Judge Wood, the majority's holding underscores the problem. My colleagues take the Nunns' side in an ongoing dispute about what happened during the May 2019 case management conference. In my view, the fact that

34

there is an ongoing dispute of this nature, in and of itself, shows we are not being faithful to *Miller & Lux*.

   f. <u>*Govea v. Superior Court*</u>

  The majority's discussion of *Govea v. Superior Court*, *supra*, 26 Cal.App.2d 27 provides a useful segue from *Munoz* and *Smith*. *Govea* is the fountainhead of another line of cases applying principles of equity under former section 583, in that case for oral extension agreements. It does for oral agreements what *Smith* does for written stipulations: Once an oral agreement is made and complies with *Miller & Lux*—meeting the requisites of clear expression and recitation in court—the holding in *Govea* bars a defendant from reneging on the agreement.

  The key events in *Govea*, recited in court minutes, took place on September 21, 1937, when the parties agreed to continue the date originally set for trial, November 5, 1937, four days before the five-year statutory deadline to commence trial was to expire. (*Govea*, *supra*, 26 Cal.App.2d at p. 29.) The court continued the trial date to November 12, 1937, three days after the deadline expired, "on motion of defendant's counsel . . . stipulated to by plaintiffs' counsel." (*Ibid*.) Later, on its own motion, the court ordered a further continuance to January 21, 1938, to suit its own calendar needs, but what produced the first date beyond the deadline was the parties' stipulation. (*Ibid*.) This was not something the *Govea* plaintiffs asked the Court of Appeal panel to infer circumstantially, as the Nunns try to do here. The court minutes showed undeniably that the defendant made a motion for the setting of a date after the deadline, and the plaintiffs joined in it. (*Id*. at p. 31.)

  Because the defendant's counsel telephonically reported to the court clerk his desire for a continuance and the plaintiffs' agreement to it, he

argued that he was not responsible for the post-deadline continuance because he was not in court on September 21 (*Govea*, *supra*, 26 Cal.App.2d at p. 31)—a bald challenge to the credibility of the clerk who recorded that the continuance was granted based on his motion.  In effect, he argued that because he made what would later become commonplace as a telephone appearance, any agreement evidenced by his motion was invalid under *Miller & Lux*.  Applying the doctrine of equitable estoppel, the *Govea* court explained that "the records of a trial court import absolute verity and cannot be questioned upon appeal . . . ." (*Id.* at p. 32.)  A party will not be allowed to deny what is clear and uncontrovertible in court minutes.  (*Ibid.*)  To do so, said the appellate panel in *Govea*, would allow him to "play fast and loose with the court." (*Id.* at p. 31.)

    *Govea*'s estoppel analysis is not an artifact of a time "before the statutory trial deadline could be extended by oral agreement."  (Maj. opn. *ante*, at p. 15.)  The Law Revision Commission was crystal clear on this point.  In support of its explanatory comment that section 583.330, subdivision (b), "codifies existing case law,"[22] the Law Revision Commission cites *Govea*.  This shows that the statute does not supplant the holding in *Govea*—rather, it *embodies* the holding in that case.  We cannot, by our own lights, decide we have "no need to resort" to it (maj. opn. *ante*, at p. 15) because skipping past this foundational case ignores legislative intent.  To apply section 583.330, subdivision (b), in other words, *is* to apply *Govea*, whether the plaintiff can meet the *Miller & Lux* standard or not.

    Turning, then, to the application of *Govea* in this case, the primary holding there was that an undeniable agreement to extend the five-year

---

[22]  1984 Cal. Law Revision Rep., *supra*, at page 935, comment on proposed section 583.330, subdivision (b).

36

period, evident on "clear and uncontrovertible" facts, as confirmed contemporaneously in court minutes—in other words, an agreement that meets the demanding standard of *Miller & Lux*—will be enforced by estoppel should the defendant attempt to deny it. But there is further nuance in *Govea* that must not be overlooked. As important as the primary holding of *Govea* is to the evolution of the case law, the flip side of it is more notable. In cases where a plaintiff claims there was an oral agreement extending a statutory trial deadline, but cannot show the agreement meets the strictures of *Miller & Lux, Govea* recognizes that another form of estoppel may apply.

What this means, as a practical matter, is that plaintiffs, like the Nunns, who insist there was an oral agreement to extend a statutory trial deadline but cannot meet the *Miller & Lux* standard, are not automatically out of court. Because equity softens the sometimes harsh consequences of failure to meet mandatory trial deadlines, plaintiffs who find themselves in this position may still argue that the defendant lulled them into a false sense of security by conduct causing them to forebear to do some things which they otherwise would have done and then took advantage of the inaction caused by their own conduct. (*Tresway*, *supra*, 5 Cal.3d at pp. 437–438.) It is this aspect of *Govea*—estoppel by deception[23]—that is specifically relevant to the

---

[23] Under this species of estoppel, "courts of equity do not mean that the defendant's conduct in denying the validity of the agreement is *actual* fraud,—a willful deception,—but simply that it is unconscientious." (3 Pomeroy, *supra*, § 803, at p. 186; see *id*. at p. 187 ["When all the varieties of equitable estoppel are compared, it will be found . . . that the doctrine rests upon the following general principle: When one of two innocent persons— that is, persons each guiltless of an intentional, moral wrong—must suffer a loss, it must be borne by that one of them who by his conduct—acts or omissions—has rendered the injury possible."].)

Nunns' case, because they, too, attempt to build an argument from events that were not contemporaneously documented.

But on this record the Nunns cannot call upon the secondary holding in *Govea*. Under the classic definition of estoppel by deception as later enunciated in *Tresway, supra*, 5 Cal.3d 431, courts evaluate unilateral conduct by the defendant and whether that conduct induced some action or forbearance by the plaintiff to its disadvantage. (*Id.* at pp. 437–438.) An estoppel will not be imposed in the context of a motion for mandatory dismissal unless there was a duty on the part of the defendant to act and a failure to do so. (*Wright, supra*, 206 Cal.App.2d at p. 494.) Focusing on the *Govea* court's pointed comment about "fast and loose" conduct by the defendant's counsel in that case (*Govea, supra*, 26 Cal.App.2d at p. 31; maj. opn. *ante*, at p. 15)—the same type of gamesmanship, decried in *Smith*, where two defendants attempted to back out of a written extension agreement—the majority nods in this direction by asserting that the Chase Defendants were complicit in the setting of a January 2020 trial date because they requested it. I have pointed out the lack of factual support for this assertion in the record, but the idea is legally unsound as well. *Govea* was embraced by the California Supreme Court in *Woley, supra*, 51 Cal.2d 402, which marked a significant turning point in the evolution of the law concerning trial deadline extensions by oral agreement.[24] I turn next to *Woley*, which shows that (1) a defendant's request for a trial date after the mandatory deadline is an insufficient basis for proving up an oral agreement

---

[24] Before *Woley*, courts were generally resistant to the use of estoppel as a mechanism to enforce oral agreements to extend statutory trial deadlines. (*Miller & Lux, supra*, 192 Cal. at p. 339; *Larkin v. Superior Court, supra*, 171 Cal. at pp. 725–726; *Pacific States Corp. v. Grant* (1927) 87 Cal.App. 108, 115–117.)

under *Miller & Lux*, and (2) unless the plaintiff can demonstrate that it exercised diligence, the doctrine of estoppel is unavailable as well.

g. *Woley v. Turkus*

Without actually applying *Govea*, the majority attempts to fit the facts of this case into *Govea*'s factual framework. (Maj. opn. *ante*, at pp. 15–16.) It is a poor fit, and the Supreme Court's decision in *Woley*, which the majority nudges aside along with *Govea*, is instructive as to why. In *Woley*, the action was filed on December 28, 1950. (*Woley, supra*, 51 Cal.2d at p. 404.) In early December 1955, nearly five years later, with the statutory deadline to commence trial about to expire, the plaintiff filed a motion bringing the imminent deadline to the court's attention and seeking an accelerated trial date. (*Ibid*.) The court set a trial date of December 27, 1955, within the five-year period, and calendared a motion for summary judgment by the plaintiff for the same day. (*Id*. at p. 405.) In response, the defendant, claiming nothing had been done to prepare the case for trial in five years, and that more time was needed to respond to the plaintiff's summary judgment motion, moved for a continuance to January 13, 1956, upon an express written stipulation explicitly acknowledging that the date was past the five-year deadline. Defendant's attorney acknowledged in open court that the plaintiff "was not to be prejudiced" by the continuance. (*Id*. at pp. 404–405.) On January 13, the court took the motion for summary judgment under submission and continued the trial date—"without objection by the defendant"—so that the trial could take place, if necessary, after the summary judgment motion was decided. (*Id*. at p. 405.) The summary judgment motion was eventually denied, and the case went back on the trial calendar in June 1956, at which point the defendant moved for mandatory

39

dismissal for failure to bring it to trial within the five-year period as expressly extended to January 13, 1956. (*Id.* at pp. 405–406.)

The *Woley* court held that the defendant's conduct in requesting more time to respond to the plaintiff's summary judgment motion, in wanting to see that motion decided before the case was tried, and in promising that the continuance the defense sought should be without prejudice to the plaintiff, would be enforced as an oral agreement to extend the five-year period for however long it took to complete the summary judgment proceedings. (*Woley*, *supra*, 51 Cal.2d at pp. 404–409.) Even though there was no formally sufficient written agreement extending the deadline beyond January 13, 1956, the court specifically found that "[t]hrough no lack of diligence on the part of the plaintiff the trial was not commenced on that date but was postponed by the court." (*Id.* at pp. 408–409.) It invoked *Govea* to estop the defendant from denying an agreement to extend the five-year period, distinguishing *Miller & Lux* and a string of other cases that refuse to recognize trial deadline extensions by "inferential consent" (*Miller & Lux*, *supra*, 192 Cal. at p. 340).[25] "In each of those cases," the *Woley* court pointed

_____

[25] The *Woley* court summarized these cases as having involved situations where "a continuance was granted without objection from the plaintiff" (citing *Miller & Lux*, *supra*, 192 Cal. at pp. 336–337); "the plaintiff orally acquiesced in continuances beyond the statutory period" (citing *Boyd v. Southern Pacific R. R. Co.* (1921) 185 Cal. 344, 346); "the continuance was obtained without the plaintiff's objection" (citing *Bank of America v. Moore & Harrah* (1942) 54 Cal.App.2d 37, 42); or a "continuance was obtained over the plaintiff's objection" (citing *Ravn v. Planz* (1918) 37 Cal.App. 735). (*Woley*, *supra*, 51 Cal.2d at p. 407 [citing and describing cases].) Among these cases, *Boyd* is notable for its cogently explained rejection of the plaintiff's contention that the defendant's failure to object to a trial date set beyond the five-year deadline may be taken as an agreement or consent: "[T]he plaintiff's counsel seem[s] to mean by acquiescence the mere failure of the

40

out, the plaintiff failed to call to the trial court's "attention . . . the necessity for [a] trial date within the time required by [former] section 583." (*Woley, supra,* 51 Cal.2d at p. 407.)

The basis on which the Supreme Court distinguished this vein of authority in *Woley*—an earlier generation of precedent anticipating *Wright* and its progeny—shows beyond doubt that the majority's effort to divine an agreement from nonobjection and acquiescence has never been accepted as the basis for an enforceable oral extension agreement. (See fn. 25, *ante,* pp. 40–41.) The oral agreement enforced in *Govea* was expressly stated on the record—a trial date had been secured by the plaintiff within the deadline, the defendant moved to continue to a date after the deadline (which was an offer), and the plaintiff stipulated to the motion (which was acceptance), thereby giving up his pre-deadline trial date (consideration)—all as shown in court minutes. There was no need to find "inferential consent." (*Miller & Lux, supra,* 192 Cal. at p. 340.) Agreements implied from conduct and unrecorded in contemporaneous court records failed to meet the *Miller & Lux* "clear and uncontrovertible evidence" standard (*ibid.*) at the time *Govea* was decided, and still do not meet it today. That is why, ever since *Govea*, courts have always applied *Tresway*-type estoppel by deception analysis in cases—

_____

defendant to object to setting the cause for trial. But such failure alone would neither constitute a consent or agreement to try the case at the time set nor amount to a misleading of the plaintiff. Certainly, without one or the other of these elements there could not be a waiver either direct or by estoppel." (*Boyd v. Southern Pacific R. R. Co., supra,* 185 Cal. at p. 347.) The majority's statement that it would "view this case very differently if the Chase defendants had objected or responded to the court's November proposal by saying they preferred an earlier trial date" (maj. opn. *ante,* at pp. 11–12, fn. 3, italics omitted) cannot be reconciled with *Boyd*.

41

like this one—where the plaintiff alleges an oral agreement drawn implicitly from circumstances and conduct.

But to succeed with an estoppel by deception argument, *Woley* tells us the key additional fact that must be present, triggering the estoppel, is that both parties must be "aware of the necessity for expediting the proceedings in order to avoid the mandatory provisions of [former] section 583 and that their activities were carried on with this necessity in mind." (*Woley*, *supra*, 51 Cal.2d at p. 408.) The Supreme Court held that *Woley* was a "comparable" case to *Govea*, but on facts where the plaintiff brought the approaching statutory deadline to the court's attention and moved for an accelerated trial date. (*Id*. at pp. 404, 408.) This case is not "comparable" to *Govea* because the Nunns cannot make a similar showing of diligence. That is the essence of the matter here, and it no doubt explains why my colleagues and I read the record so differently.

The standards for waiver of a defendant's right to dismissal under the five-year statute (§ 583.310) are generally applicable to section 583.320, except that "[u]nder a shorter statute of limitations the burden on the litigant to demonstrate diligence in insuring that the matter will be brought to trial in a timely manner is increased." (*Mesler v. Bragg Management Co.* (1990) 219 Cal.App.3d 983, 995.) The Nunns, as plaintiffs, had " 'a continuing duty to correctly compute the statutory [three years] and to advise the court of the impending deadline.' " (*Wale v. Rodriguez* (1988) 206 Cal.App.3d 129, 133.) "It is precisely when the five-year [or three-year] deadline looms that the greatest diligence is demanded." (*Ibid*.) "Central to this duty is the specific duty to use every reasonable effort to bring the matter to trial within the five-year [or three-year] period." (*Tejada v. Blas* (1987) 196 Cal.App.3d 1335, 1340.) "The duty is on the plaintiff to obtain a trial within the time required

42

by [former] section 583, subdivision (b).  A plaintiff may not avoid the operation of the statute by simply saying he acquiesced in the trial date set by the court or clerk beyond five years from the commencement of the action." (*Central Mutual Ins. Co. v. Executive Motor Home Sales, Inc.* (1983) 143 Cal.App.3d 791, 795.)  Defendants are required to cooperate in bringing actions to trial or other disposition (§ 583.130), but they have " ' " 'no affirmative duty to do more than meet the plaintiff step by step.' " ' " (*State Compensation Ins. Fund v. Selma Trailer & Manufacturing Co.* (1989) 210 Cal.App.3d 740, 754; accord *Wright, supra*, 206 Cal.App.2d at p. 495.)

No diligence was shown in this case.  For nearly three years before the May 2019 case management conference, the Nunns had failed to secure a trial date.  Given that failure of diligence, and given their failure to speak up in May 2019 about the approaching statutory deadline, they cannot show the Chase Defendants, by words and conduct, lulled them into giving up something to their detriment (e.g., withdrawing a request for an accelerated trial date before the deadline, or releasing a previously secured trial date and agreeing to a later date after the deadline).  The majority takes the view that diligence is only relevant under section 583.340, subdivision (c), the exception for impossibility, impracticability, or futility.  (Maj. opn. *ante*, at p. 11.)  I do not agree.  Because of the continuing role equity plays under the statutory scheme as a whole (§ 583.140), and because of the codification of *Govea* in particular for oral extension agreements (§ 583.330, subd. (b)), that cannot be the case.

## C. *We Should Defer to the Trial Court's Refusal To Apply Estoppel in This Case*

To wrap things up, I return briefly to the record in this case.  The majority correctly concludes it was appropriate for the Nunns to bring a new trial motion raising their oral agreement theory for the first time after entry

43

of judgment. But the timing nonetheless shows what a Hail Mary pass this was, which ought to raise a caution flag for us even if it does not bar the Nunns from employing this line of argument. The Nunns retained their current attorney, Dell'Ario, in February 2020, and he promptly filed the new trial motion asserting the theory that there had been an extension of the statutory trial deadline by oral agreement. But Dell'Ario did not attend the May 2019 case management conference. His predecessor, Freshman, who *did* attend the May 2019 case management conference on behalf of the Nunns, never made any attempt to claim there had been an oral agreement at that conference. Freshman prepared the Nunns' opposition to the Chase Defendants' motion for mandatory dismissal in September 2019, and instead of trying to argue some kind of oral extension agreement, he took the path the law requires: Pointing out that the Chase Defendants engaged in discovery abuse, and then at the case management conference that they mentioned a need for further discovery and said they planned to file a summary judgment motion, he argued the Chase Defendants should be barred from seeking mandatory dismissal under equitable estoppel principles.

Judge Langhorne rejected the argument. Granting the Chase Defendants' motion to dismiss for failure to bring the case to trial within the three-year statutory period, Judge Langhorne pointed out that "delays caused by plaintiff's counsel's tactical choices are not matters 'over which plaintiff had no control. . . .' "(Italics omitted.) Judge Langhorne also explained that the Nunns had failed to show the Chase Defendants "engaged in deceptive conduct designed to prevent [them] from bringing this case to trial prior to the expiration of the statutory period or to induce them to refrain from filing a motion to specially set the matter for trial." These are matters of factual

44

assessment that are properly for the trial court. (*Borglund v. Bombardier, Ltd.* (1981) 121 Cal.App.3d 276, 281–282.) We review the trial court's factual findings relating to estoppel for substantial evidence (*Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1263), and the ultimate equitable determination whether to apply the doctrine for abuse of discretion (*Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 46–47 [judicial estoppel]). Ultimately, the Nunns' estoppel argument did not succeed when presented to the trial court here because they failed to do what the plaintiffs did in *Woley*—bring the approaching statutory deadline to the attention of the court and move for an accelerated trial date.

Notably, moreover, in addition to specifically finding a failure to seek an accelerated trial date, Judge Langhorne also made a more general finding that "[t]here is no indication the Nunns have exercised diligence." Because it is a basic precept of equity that " ' "he who seeks equity must do equity" ' " (*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 446; 2 Pomeroy, *supra*, § 385, at pp. 51–55), this finding underscores the overarching problem the Nunns face here. Their lack of diligence over the three years following issuance of the remittitur, culminating in their failure to inform the court in May 2019 of the imminent expiration of the deadline, disqualifies them from calling upon equity for assistance.[26]

---

[26] The Nunns' failure to show diligence also disqualifies them from relying on the policy favoring decision on the merits. In codifying the policy favoring decision on the merits, the Legislature did not create a magic wand that wipes away failures of diligence. (See *Mesler v. Bragg Management Co.*, *supra*, 219 Cal.App.3d at p. 996, fn. 12 ["we are unable to discern that in fostering the public policy in favor of 'trials on the merits' the Legislature intended to cast to the four winds a requirement of diligence on the litigants in pursuing that goal"].) For each of the favored policies declared in section 583.130—including the policy favoring the right of parties to make

## CONCLUSION

Whatever the Chase Defendants did on May 16, 2019, no one accuses them or their counsel of connivance, deception or other unfairness designed to take advantage of their litigation adversaries on that day. The record in this case, fairly read, shows that neither side was aware in May 2019 of the imminent three-year deadline. The core issue here is who, if anyone, had the burden of alerting the court to that deadline. The majority apparently believes no one did.

I must disagree. I think there was such an obligation and that the burden fell on the Nunns. And in order for them to make the showing of diligence that is required to avoid mandatory dismissal, they had to raise the issue. They did not, which closes the only route the law gives them based on an argument that the "words and actions by the parties" at the May 2019 case management conference "constitute objective evidence of an agreement to set the trial for a specific date . . . beyond the three-year deadline." (Maj. opn. *ante*, at p. 14.)

By conflating the rules governing enforceability of oral agreements that meet the demanding standard of *Miller & Lux* with the rules governing oral agreements by estoppel under *Govea,* the majority introduces confusion into

---

stipulations—what strikes the balance against the competing policy of promoting diligent prosecution is the very existence within the statutory scheme of a series of express, statutorily recognized exceptions to mandatory dismissal. But the plaintiff must still prove the applicability of any given exception in any given case. (See *Salas v. Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 347 ["although the interests of justice weigh heavily against disposing of litigation on procedural grounds—a policy we reaffirm—that policy will necessarily prevail only if a plaintiff makes some showing of excusable delay"].) On this record, the Nunns have proved none of the various exceptions they tried to invoke at various times in response to the Chase Defendants' motion to dismiss.

each of these well-settled but subtly intertwined areas of law, while diluting the standards that apply in both.

With respect, I must dissent.

STREETER, J.

Trial Court:        Napa County Superior Court

Trial Judge:        Hon. Monique Langhorne

Counsel:            Alan Charles Dell'Ario for Plaintiffs and Appellants

                    Bryan Cave Leighton Paisner, Glenn J. Plattner, Joseph J.
                    Poppen, Daniel T. Rockey, and David Harford for Real
                    Parties in Interest

*Nunn et al. v. JPMorgan Chase Bank, N.A. et al.* (A160286, A160794)